LYNCHBURG COAL & COKE CO. v.
UNITED STATES.

No. 45501.

Court of Claims.

Dec. 7, 1942.

Dion S. Birney, of Washington, D. C., for plaintiff.

Daniel F. Hickey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

Plaintiff, pursuant to claims for refund timely filed and rejected by the Commissioner of Internal Revenue, sues to recover alleged overpayments of income and excess profits taxes for the years 1934 and 1935 which, plaintiff asserts, were wrongfully collected from it.

Plaintiff's theory as to the asserted excessiveness of the taxes collected from it in 1934 and 1935 is as follows: Plaintiff is, and has been since 1890, the lessee of coal lands in West Virginia from which it mined coal, paying to the lessor a royalty per ton of coal mined. When taxes on incomes began to be levied in 1913, plaintiff, because it was a lessee and not an owner of the coal in place, was not permitted to deduct from its income for tax purposes depletion resulting from its removal of coal. Treasury Regulations No. 33 of January 5, 1914, Art. 145; Treasury Regulations No. 33 (Revised) of January 2, 1918, Art. 171. In 1918 the statute was amended to give to a lessee such as plaintiff the right to a depletion deduction (Revenue Act of 1918, Sec. 214 (a) (10), 40 Stat. 1057, 1067), and for the years 1918 to 1933 plaintiff was permitted to deduct depletion occurring in those years from its income for tax purposes. The regulations which had been applied for the years 1913–17 were invalidated by the decision of the Supreme Court of the United States in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660, a case in which plaintiff was not a party. This decision, made in 1925, came too late to permit plaintiff to sue for its overpayments made in 1913–17. Those overpayments amounted to $5,568.43, the erroneously disallowed depletion having amounted to $39,672.96.

During the years 1918–33 the defendant, in applying its formula for allowable depletion, treated the coal actually mined in 1913–17, but for which no depletion allowance had been made, as if it were still in place. Specifically, it treated plaintiff as having, in 1918, coal in place of a value of $182,229.95, when in fact that was the 1913 value, plaintiff having taken out coal of the depletion value of $39,672.96 in the years 1913–17. Since the value of intact coal at the beginning of a year is a factor in the formula by which the value per ton of coal mined in that year is set for the purposes of the depletion allowance, plaintiff would have been able, if this treatment of its intact coal as of 1918 had continued, to take all the depletion allowable by the time its mine would have been in fact exhausted, since the depletion unit per ton in the later years would have been larger, and would thus have made up for the amount erroneously disallowed in the years 1913–17.

In 1934, however, the Commissioner of Internal Revenue changed his former practice with reference to plaintiff's operation, and reduced the intact value of the coal, which had up until that time been annually reduced by the value of the number of tons taken out in each of the years 1918–33, by the additional amount of $39,672.96, which, as we have seen, was the value of the number of tons mined in the years 1913–17. The consequence of this reduction was that the smaller intact value thus left, divided by the number of tons actually remaining in place, produced a depletion unit of 6.034 cents per ton for the coal actually mined in 1934. If the $39,672.96 had been left in the intact value, as plaintiff desired, the depletion unit would have been 10.78136 cents per ton. A similar difference existed for 1935. The resulting difference in the amount of taxes for the two years was $3,542.92, which, with interest, but reduced by an item of sales tax not in dispute, plaintiff seeks to recover.

Plaintiff does not seriously dispute the correctness of the Commissioner's computations for 1934 and 1935 standing by themselves. The applicable statute, Revenue Act of 1934, §§ 23(m) (n), 114(b) (1), 113 (a) (13), and (b) (1) (B) (C), 26 U.S.C.A. Int.Rev.Code, §§ 23(m, n), 114(b) (1), 113(a) (13), (b) (1) (B, C), required the Commissioner to make deductions for depletion previously allowed but not less than the amount *allowable* under prior income-tax laws. Since the 1913–17 erroneously disallowed depletion was *allowable*, the Commissioner was required to deduct it. But, plaintiff urges, the net consequences of his deducting it in 1934 and 1935, when in fact it had been disallowed in 1913–17, means that plaintiff over-paid its taxes in those earlier years and the government is unjustly enriched by that amount. This is true, and, of course, plaintiff's right to sue directly for a refund of the 1913–17 taxes is long since barred by the Statute of Limitations. But plaintiff urges that by the doctrine of recoupment it may be permitted to subtract its barred overpayment from its current taxes, or may at least insist that the Government pursue to the end the method of computation which it followed in the years 1918–33, which would result in the correction of the overpayments of 1913–17.

We think that we are not free to apply the equitable doctrine of recoupment, assuming that it would otherwise be applicable, because to do so would contradict the specific language of Sections 608 and 609 of the Revenue Act of 1928, 45 Stat. 791, 874, 26 U.S.C.A. Int.Rev.Acts, pages

459, 460. The language of those sections here pertinent is as follows:

"§ 608. A refund of any portion of an internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) made after the enactment of this Act, shall be considered erroneous—

"(a) if made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; * * *."

"§ 609. * * *

"(b) Credit of Barred Overpayment. A credit of an overpayment in respect of any tax shall be void if a refund of such overpayment would be considered erroneous under section 608.

"(c) Application of Section. The provisions of this section shall apply to any credit made before or after the enactment of this Act."

It cannot be that the Commissioner's refusal to do an act, here crediting plaintiff in 1934 and 1935 with overpayments made in 1913-17, which act Section 609 expressly declares to be void if he attempts to do it, will lay the Government open to suit because he did not do it.

The case of Josephine V. Hall v. U. S., 43 F.Supp. 130, 95 Ct.Cl. 539, recently decided by this court, is directly in point. The Hall case followed McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, and that case is likewise controlling here. Plaintiff urges that the case of Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L. Ed. 1265, should control this case. But the statutory provisions directly applicable here were not applicable in Stone v. White. There trustees paid a tax upon income of a trust, which tax should have been paid by the beneficiary. It was timely, though erroneously, assessed against the trustees before, and paid by them after, the statute had run against collection from the beneficiary. The Court, because of the trustee-beneficiary relation, treated the payment as if it had been made by the beneficiary herself, as it was made from her funds, though the amount was less than it would have been if assessed against her. So the beneficiary was really suing to get back money which she had in fact owed and which had been paid out of her funds by her trustee. It was a clear case for the equitable doctrine of recoupment in the absence of a controlling statute. The Court held that since the collection from the trustees, though erroneous, was not barred by limitation, Section 607, which relates only to overpayments barred by limitation, was not applicable. In the instant case, Sections 608 and 609 are applicable, and we cannot disregard them.

■ Plaintiff urges that Section 820 of the Revenue Act of 1938, 52 Stat. 581, Internal Revenue Code, Sec. 3801, 26 U.S.C. A. Int.Rev.Code, § 3801, gives it a right of adjustment. Plaintiff did not, in its claim for refund filed with the Commissioner of Internal Revenue, include this ground for its claim. We do not determine whether or not its failure in this regard has disqualified plaintiff from here asserting this ground for recovery, as we think Section 820 has no application. Subdivision (f) of that section says:

"No adjustment shall be made under this section in respect of any taxable year beginning prior to January 1, 1932."

Plaintiff contends that since its claim is for a refund of taxes for 1934 and 1935 it comes within the affirmative provisions of the statute, and not within subdivision (f). We think, however, that the intent of the statute was that its operation should not go back of 1932. Here the adjustment sought is really for taxes wrongfully collected in the years 1913-17, rather than for the years 1934 and 1935, and we think that Congress could not have intended to mean that any claim, however old, would come within the statute merely because the later tax, against which the old one might be offset, was for the year 1932 or later.

It follows that plaintiff is not entitled to recover, and its petition will be dismissed. It is so ordered.