AMERICAN LIGHT & TRACTION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97234.   Promulgated November 1, 1940.

*Floyd F. Toomey, Esq.,* and *Ellsworth C. Alvord, Esq.,* for the petitioner.

*Arthur W. Carnduff, Esq.,* and *Brooks Fullerton, Esq.,* for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined a deficiency of $550,227.33 in income tax for 1930 and one of $309,597.44 for 1931. The facts have been stipulated. The petitioner assigned as error the action of the Commissioner in computing a profit to its four subsidiaries from the sale of debentures at face value, by refusing to allow the use of their cost as basis, the cost being equal to the amount realized from the sale. The Commissioner, by amended answer filed at the hearing, raises the issue of whether the petitioner is estopped to deny that a lower basis (cost of property given in 1928 in exchange for the debentures) is proper.

The petitioner was the top holding company of a large group of corporations engaged principally in supplying artificial gas to the public. It owned the entire capital stock of four New Jersey corporations known as Mutual, Waverly, Bexley, and Provident. The four subsidiaries together owned 153,200 shares of the common stock of the Brooklyn Union Gas Co. The four, on July 27, 1928, transferred all of their assets, consisting of the 153,200 Brooklyn Union shares and debentures of Brooklyn Union, to four Delaware corporations in exchange for debentures of the four Delaware corporations of the face amount of $21,321,900. The stock of the four Delaware corporations was owned by others. These exchanges were a part of a larger plan more fully described in *United Light & Power Co.,* 38 B. T. A. 477; affd., 105 Fed. (2d) 866; certiorari denied, 308 U. S. 574. The cost to the four New Jersey corporations of the property transferred by them was less than the fair market value of that property on July 27, 1928. The fair market value of the property, the fair market value of the Delaware debentures, and the

face value of the debentures were all the same, $21,321,900, on the date of the exchange. The four New Jersey corporations sold some of the debentures at face value in 1930 and 1931. The petitioner did not report any profit from those sales on its consolidated returns for 1930 and 1931. The Commissioner, in determining the deficiencies, computed a gain by using the basis of the property given in 1928 in exchange for the debentures.

The petitioner contends that the old basis could be used in lieu of cost only in case the 1928 exchanges were statutory reorganizations under section 112 (i) (1) (A) of the Revenue Act of 1928 (see secs. 112 (b) (4) and 113 (a) (6)); they were not such reorganizations since the four New Jersey corporations after the exchange held only debentures of the Delaware corporations, and the Supreme Court has held that the necessary continuity of proprietary interest in the transferred property is lacking where the transferor receives only bonds of the transferee (*LeTulle* v. *Scofield*, 308 U. S. 415; cf. *United Light & Power Co.*, *supra*); and, consequently, the normal basis of the cost of the debentures must be used. Sec. 113 (a). That cost was the same as the selling price and no gain resulted. The Commissioner, in his brief, mildly resists this contention, but assumes that the Board will adopt it as the only correct application of the statutory provisions as interpreted by the Supreme Court. It is the only conclusion possible under the applicable statutory provisions. Consequently, if the provisions of the statute are to be followed, the four subsidiaries of the petitioner had no gain when they sold the Delaware debentures for face value, which was equal to the cost of the debentures to the four subsidiaries.

The Commissioner relies upon his affirmative contention that the petitioner and its subsidiaries are estopped to deny that the use of the old basis is proper since they reported no gain from the 1928 exchanges and resisted when a representative of the Commissioner auditing the return for 1928 suggested that there was a gain at that time. The Commissioner concedes that there is no basis for, what he terms, estoppel *in pais*, since there was no misrepresentation or withholding by the taxpayers, no intended deception in their conduct or declarations, and no reliance thereon by the Government. He says he relies upon the broad equitable rule that, where one has taken a position and received benefits therefrom, he will not be permitted to act later in an inconsistent manner to the detriment of another. Such a rule has been applied at times by the courts and the Commissioner has cited a number of those cases.

Mr. Justice Cardozo, in *Stearns Co.* v. *United States*, 291 U. S. 54, stated the rule to be "that no one shall be permitted to found any claim upon his own inequity, or take advantage of his own wrong. * * * A suit may not be built on an omission induced

by him who sues." But, because the unnamed rule is stated in such general terms, there is extreme difficulty in knowing whether or not to apply it in particular cases. The Commissioner frequently takes inconsistent positions to the sorrow of taxpayers, yet such mistakes are not later adjusted by unlawful deductions. Cf. *Fairmount Foundry, Inc.*, 42 B. T. A. 1087. Since both parties have full opportunity to have the tax liability determined in accordance with the statutes, the statutory test should not be abandoned for a test based upon the ethics or morals of the conduct of one of the parties except under exceptional circumstances. *Tide Water Oil Co.*, 29 B. T. A. 1208. The Board said in *James Couzens*, 11 B. T. A. 1040, that "such an argument must be treated with the utmost caution, since its sanction in any case would result in having an individual tax liability depend, not upon the factors and measures prescribed by Congress as applicable to all, but upon the statements and conduct of a particular" person.

This general subject was carefully considered and discussed at some length in the *Tide Water Oil Co.* case, *supra*. There the taxpayer had believed and had argued to the Commissioner that it was affiliated with Tidal. The Commissioner came to the same conclusion. Later the Supreme Court held that there was no affiliation under similar circumstances. It was then too late to tax Tidal separately and the Commissioner contended that Tide Water was estopped to deny its affiliation with Tidal. The Board held that there was no right to elect between affiliation and nonaffiliation, no waiver, and no estoppel of any kind, but merely a misunderstanding of the law by both parties as to which each had to take his chances. It pointed out that the Commissioner, upon whom was placed the duty of correctly interpreting the law, could not hold the taxpayer to the consequences of a mutual misinterpretation. The Board refused to depart from the statutory provisions because of any doctrine akin to estoppel, saying:

Whatever doctrine analogous to estoppel the respondent would invoke, it must be founded upon some act or omission of the petitioner for which in equity it should be held to account. The equities must be strong to overshadow the law. There is here no suggestion of fraud, untruthfulness, concealment, misrepresentation, omission, negligence, violation of duty, or unfair conduct on the part of the petitioner. It was no more the author of the misfortune than was the Commissioner. The latter was in as good a position as the former to make all proper decisions. Thus, in this case there is no occasion for applying either the doctrine of estoppel or any doctrine analogous thereto.

That case and the discussion contained therein is in point here, where the facts are substantially similar. Likewise apposite is the case of *R. E. Baker*, 37 B. T. A. 1135, wherein we said:

If the determination of the respondent of the factors required by law for the ascertainment of the basis to be used for the computation of gain or loss in 1928

is erroneous, estoppel can not be availed of to justify or perpetuate such errors. Furthermore, the Board stated in *Sugar Creek Coal Mining Co.*, 31 B. T. A. 344, 348, as follows:

> * * * As a general proposition, estoppel does not support a belated assessment merely because the taxpayer has omitted the income from his earlier returns and the statute of limitations has barred the correct assessment.

See also *Salvage* v. *Commissioner*, 76 Fed. (2d) 112; affd., 297 U. S. 106.

The facts in the present case are no more favorable to the Commissioner than were those in the *Tide Water* and *Baker* cases. Perhaps they are less so. No gain from the 1928 exchanges was reported. A revenue agent, when auditing the 1928 return in 1930, proposed a tax upon the gain. The petitioner protested upon the ground that there was a reorganization. The revenue agent in charge agreed that there was a reorganization. G. C. M. No. 11272, dated November 17, 1932, held that there was a reorganization and no gain to the four New Jersey corporations. The petitioner, on December 8, 1932, consented to a deficiency for 1928 upon other grounds. The period for assessment of any additional deficiency for 1928 expired on December 31, 1932. Note that 1928 was still open long after the returns for 1930 and 1931 were due and filed, and, although the new basis was claimed on those later returns, the Commissioner did nothing about taxing the gain for 1928. This is particularly surprising and significant in view of the fact that he held in the case of United Light & Power Co. that the 1928 transactions did not result in a nontaxable reorganization. The Board later sustained him in that holding. *United Light & Power Co., supra.* After the Commissioner had allowed the statute to run as to the 1928 tax of the four New Jersey corporations, the Supreme Court held that transactions similar to the 1928 exchanges were not statutory reorganizations. *LeTulle* v. *Scofield, supra.* Cf. *United Light & Power Co., supra*, and cases therein cited. The Commissioner now attempts to circumvent the applicable statutory provisions and the effect of the statutory period of limitation by pointing to his mistake as to 1928, blaming it upon the taxpayer, saying that it is unconscionable to allow the taxpayer to retain the benefit of that mistake, and asking that the error be offset by collecting now, contrary to statute, a larger amount than was due but unpaid for 1928. He would thus actually penalize the taxpayer for abiding by his determination of its 1928 tax liability. That does not seem equitable and we can do no better than apply the statutory provisions, which allow a cost basis equal to the sales price.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

OPPER, dissenting: If we state the problem which this case typifies in terms sufficiently broad to describe the species or type of the difficulty common to all such cases, it will appear, I think, that this Board and the courts have laid down inconsistent principles for dealing with it; if this is so, I feel that we are still at liberty to choose from among those principles that which is the most generally satisfactory; and if, as I think, a different formula from that used by the majority will result in a determination fair to the taxpayer and fair to the Government, the consequence should be its adoption in the present case.

The background common to the general problem appears to be that in a previous year now closed by the statute of limitations the taxpayer and the Commissioner have adopted a view as to the taxpayer's liability to tax which now appears to have been erroneous, but a development in the present tax year directly involving that previous treatment is open and requires our present decision. The problem is: Shall we reach that decision leaving out of consideration entirely the earlier approach which the parties have erroneously adopted, because the statute of limitations bars a readjustment for the prior year; or shall we, precisely because that earlier adjustment is now impossible, shape our present view to conform as nearly as may be to the justice and practical consequence of the entire situation, giving such weight to the previous treatment as is necessary to make the whole result one from which neither taxpayer nor Government may take an undue advantage?

This general question has, it seems to me, called for consideration on previous occasions. Where, for instance, a deduction has been taken which appeared at the time to be correct, but later circumstances have developed which place the taxpayer in a position to offset the detriment for which the deduction was allowed, it has been the consistent judicial view that then an adjustment of the tax consequences is appropriate. Typical of these cases are those where a tax originally assumed to be due is refunded because the taxing statute was unconstitutional [1] or because there was an overassessment,[2] or, an item such as a bad debt, insurance premium, or loss from embezzlement or fire, which appeared to be properly deductible was later recovered or canceled.[3] The same conclusions have been reached in instances where

---

[1] *Charles W. Nash*, 34 B. T. A. 675; affd. (C. C. A., 7th Cir.), 88 Fed. (2d) 477; certiorari denied, 301 U. S. 700; *Chevy Chase Land Co.*, 34 B. T. A. 150; *Universal, Inc.* v. *Commissioner* (C. C. A., 7th Cir.), 109 Fed. (2d) 616. See *Cartex Mills, Inc.*, 42 B. T. A. 894.

[2] *Houbigant, Inc.*, 31 B. T. A. 954; affd. (C. C. A., 2d Cir.), 80 Fed. (2d) 1012; certiorari denied, 298 U. S. 669; *Victoria Paper Mills Co.*, 32 B. T. A. 666; affd. (C. C. A., 2d Cir.), 83 Fed. (2d) 1022; *Walter M. Marston*, 41 B. T. A. 847; *Elsie S. Eckstein*, 41 B. T. A. 746; *Dixie Margarine Co.*, 38 B. T. A. 471.

[3] *Jamaica Water Supply Co.*, 42 B. T. A. 359; *Hartford Hat & Cap Co.*, 7 B. T. A. 714; *Chicago, Rock Island & Pacific Ry. Co.* v. *Commissioner* (C. C. A., 7th Cir.), 47 Fed. (2d) 990; certiorari denied, 284 U. S. 618; *South Dakota Concrete Products Co.*, 26 B. T. A. 1429; *Cooper* v. *United States* (C. C. A., 8th Cir.), 9 Fed. (2d) 216. See *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359.

the taxpayer has omitted to include in income an item which it later appears should have been taxed.[4]  One and possibly two limitations are imbedded in this view.  The taxpayer will not be charged with income in the later year to the extent that he obtained no income tax benefit from the privilege of deduction in the first instance.[5]  And perhaps it is only where the statute of limitations has run against the earlier year, precluding adjustment of the original tax liability in accordance with the subsequently discovered actuality, that the rule applies.[6]  These results have been reached without resort to strict principles of waiver, estoppel, or election and it seems apparent that only confusion can result from attempting to apply them to such a situation.  Beyond the recognition that equitable doctrines similar to unjust enrichment [7] are involved, such technical aspects as whether there was misrepresentation or mutual mistake, error of law or of fact, reliance, detriment, and the like, can advance us little in disposing of a controversy involving elements so "essentially practical." [8]

It is true that there are authorities, as the prevailing opinion shows, which appear to deny the possibility of the kind of subsequent adjustment which seems to me called for here.[9]  But my feeling that there is no tenable distinction in principle among the cases thus reaching divergent results is the justification for the statement made earlier that holdings on the present problem in its larger aspect have been inconsistent.  There is as much "right of election" here as there was, for example, in *Moran* v. *Commissioner;* as much of an "estoppel" as there was in *Stearns Co.* v. *United States;* no more of a "mistake of law" than in *Charles W. Nash.*  And it violates the classic definition, see e. g. *Eisner* v. *Macomber*, 252 U. S. 189, 207, at least as much to characterize as income the refund to the taxpayer of his own funds which he should not have paid in the first place, as it does to include as income an amount resulting from reducing an admitted receipt by

[4] *Commissioner* v. *Farren* (C. C. A., 10th Cir.), 82 Fed. (2d) 141; *Larkin* v. *United States* (C. C. A., 8th Cir.), 78 Fed. (2d) 951; *Moran* v. *Commissioner* (C. C. A., 1st Cir.), 67 Fed. (2d) 601, affirming 26 B. T. A. 1154; *Raleigh* v. *United States* (Ct. Cls.), 5 Fed. Supp. 622; *Crane* v. *Commissioner* (C. C. A., 1st Cir.), 68 Fed. (2d) 640, affirming 27 B. T. A. 360; *Alamo National Bank of San Antonio, Executor,* 36 B. T. A. 402; affd. (C. C. A., 5th Cir.), 95 Fed. (2d) 622; certiorari denied, 304 U. S. 577.  Contra, *Helvering* v. *William's* (C. C. A., 8th Cir.), 97 Fed. (2d) 810, *Salvage* v. *Commissioner* (C. C. A., 2d Cir.), 76 Fed. (2d) 112, the affirmance of which, 297 U. S. 106, is of such ambiguity that "it does not seem that the conflict, if there be one, is resolved." *Commissioner* v. *Farren, supra,* 143.

[5] *Central Loan & Investment Co.,* 39 B. T. A. 981; *National Bank of Commerce of Seattle,* 40 B. T. A. 72.

[6] See *Estate of William H. Block,* 39 B. T. A. 338; affd. (C. C. A., 7th Cir.), 111 Fed. (2d) 60.

[7] Cf.  Revenue Act of 1936, Title III.

[8] See *Stearns Co.* v. *United States,* 291 U. S. 54

[9] *Tide Water Oil Co.,* 29 B. T. A. 1208; *R. E. Baker,* 37 B. T. A. 1135; *Salvage* v. *Commissioner, supra;* and cf. *Rossin & Sons, Inc.* v. *Commissioner* (C. C. A. 2d Cir.), 113 Fed. (2d) 652, with *Maryland Casualty Co.* v. *United States,* 251 U. S. 342.

a basis measured by the cost not of the particular asset but of its predecessor.[10]

If we were to follow here what I think is the principle of the cases first cited we should say that the taxpayer obtained the benefit in 1928 of the payment of a smaller income tax because of an exclusion from its income which now appears to have been incorrect; that in the present year a further development of that situation has occurred raising for our consideration the total amount of taxable income which this taxpayer has received out of the transaction as a whole; and that, notwithstanding, and in fact because, adjustment of the prior year is now made impossible by the bar of the limitations statute, liability to tax shall be determined with respect to the present year by taking into consideration the prior erroneous treatment to the extent and only to the extent that a benefit was obtained by the taxpayer from underpayment of his income tax in a prior year.

It may be said that the present result is necessary to attribute the maximum possible effect to statutes of repose. To this I think it may be answered that the formula suggested does not require, nor indeed sanction, a violation of any principle that controversies must be definitely and finally set at rest. If there were no occasion, because of the events of the present year, for reopening the entire question, there would be no justification for disregarding the statute of limitations.[11] But, because something new has developed which necessarily calls into question the previous transaction, we should not allow a formal provision of limitation to interfere with a consideration of all the facts which are necessary for a just result. It seems to me statutes of limitation were not enacted for this purpose and it may well be that section 820, Revenue Act of 1938, is a broad pronouncement, not intended to be exclusive, of the legislative policy that they should not be so regarded,[12] although, unfortunately, the present case lies outside its specified scope.[13]

---

[10] Cf. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62.

[11] See *Crane* v. *Commissioner, supra.* Cf. *Sugar Creek Coal & Mining Co.*, 31 B. T. A. 344.

[12] * * * under existing law, an unfair benefit would have been obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. Such resort to the statute of limitations is a plain misuse of its fundamental purpose. The purpose of the statute of limitations to prevent the litigation of stale claims is fully recognized and approved. But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute. The Federal courts in many somewhat similar tax cases have sought to prevent inequitable results by applying principles variously designated as estoppel, quasi estoppel, recoupment and set-off. For various reasons, mostly technical, these judicial efforts cannot extend to all problems of this type. Nor can they provide a uniform, systematic solution of these problems. Legislation has long been needed to *supplement* the equitable principles applied by the courts * * *. [Senate Rept. 1567, 75th Cong., 3d sess., p. 49, (Emphasis added.)]

[13] Subsection f.

On the other hand, such a rule as is here suggested would, it seems to me, eliminate some of the difficulties and delays which are now necessarily inherent in the administration of tax legislation. Otherwise, the respondent is placed in the position where he must at his peril contest the position assumed by the taxpayer even though at the time and in the apparent state of the law that position may appear to be correct. Changes in judicial interpretation from time to time are necessarily to be reckoned with. If we are now in a period where such changes may be even more frequent and probable, that is an added reason for taking them into account. The case at bar is itself the result of a decision which, it is to be assumed, the parties did not originally foresee, *Le Tulle* v. *Scofield*, 308 U. S. 415. A rule which would permit readjustment of situations developing as a result of judicial clarification and reexamination would, it seems to me, add rather than detract from the extent to which tax cases could be promptly and, for the most part, permanently closed.