**HALL v. UNITED. STATES.**

No. 44924.

Court of Claims.

Feb. 2, .1942.

Writ of Certiorari Denied April 6, 1942.

Robert Ash, of Washington, D. C. (Mitchell & Van Winkle, of New York City, on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and MADDEN, WHITAKER, LITTLETON, and JONES, Judges.

JONES, Judge.

Thomas R. A. Hall died February 10, 1910. His estate consisted of two leaseholds of valuable New York property and certain other holdings. His will left the entire estate in trust for his widow, two sons and one daughter, the latter being plaintiff in this case. The widow was to have the income of one-third of the property during her lifetime. The other beneficiaries were to share equally the remaining two-thirds of the income and in the event of the widow's death the entire income, and finally in the distribution of the residuary estate.

The terms of the two leases expired May 1, 1938.

On June 8, 1932, the trustees, with the consent of the beneficiaries, sold the leaseholds to the trustees of Columbia University for $1,017,750, payable in 69 equal monthly installments, ending April 16, 1938.

Until the widow's death, which occurred prior to 1932, the trustees distributed the net income (without deduction for depreciation, obsolescence, or amortization) to the beneficiaries as indicated; and after the death of the widow the entire net income to the three children in the same manner. In assessing income taxes for the years prior to 1929 the Commissioner of Internal Revenue did not permit plaintiff and other beneficiaries to deduct from income received any allowances for depreciation and amortization. After the enactment of section 23(k) of the act of 1928, which made specific provision for depreciation applicable to leaseholds as well as other property, the Commissioner of Internal Revenue allowed such depreciation for the year 1929 and following years.

After the sale of the trust property to Columbia University, the trustees, in accordance with a trust provision giving them that discretion, distributed the entire assets, including undistributed income and authority to receive future payments, to the three children, all of whom were adults.

The Commissioner of Internal Revenue, in computing for tax purposes the profits from the sale in 1932, reduced the 1913 basis of value by the amount of the depreciation on the buildings and amortization of the leases from March 1, 1913, to the date of sale. The effect of this action was to increase for tax purposes the amount of the gain under the sale.

Plaintiff filed timely claims for refunds of taxes for the respective years 1932 to 1935, inclusive, on the ground that since depreciation deduction had not been allowed in the assessment of income taxes for the years prior to 1929 she was entitled to recoupment to be applied on the taxes for the years 1932–1935.

Questions: Did the Commissioner of Internal Revenue act correctly in reducing for tax purposes the basis of value of the property sold by considering depreciation, obsolescence, and amortization for the years prior to 1929?

Should the Commissioner of Internal Revenue have reduced plaintiff's taxes for the years 1932 to 1935, inclusive, by permitting recoupment, offset, or statutory credit in the amount of the alleged overpayment for the years prior to 1929? Since he did not do so may she now recover such amounts?

Plaintiff's first contention is predicated upon the claim that the taxes levied and collected for the years 1932 to 1935 were excessive on account of the fact that the basis for determining gain on the sale made in 1932 was improperly reduced by depreciation and amortization neither al-

134

lowed nor allowable for the years prior to 1929.

While depreciation and amortization had not been allowed in collecting income taxes for the years prior to 1929, we think that by the terms of the Revenue Acts of 1928 and 1932 such deductions were properly considered in computing gains on the sale made in 1932, and that the Commissioner properly so held.[1]

■ The second question presents greater difficulties.

Plaintiff contends that under the common-law doctrine of recoupment invoked in the case of Bull, Executor, v. United States, 295 U.S. 247, 261, 55 S.Ct. 695, 79 L.Ed. 1421, and in Stone et al., Trustees, v. White, 301 U.S. 532, 539, 57 S.Ct. 851, 81 L.Ed. 1265, she is entitled to recoup alleged overpayment of income taxes for the years prior to 1929, during which depreciation was not allowed, against income taxes for the years 1932 to 1935, inclusive, during which depreciation on the property for the years prior to 1929 was considered in fixing the basis of value on the leasehold property which was sold in 1932.

The defendant contends that under the doctrine laid down in McEachern, Administrator, v. Rose, 302 U.S. 56, 59, 58 S.Ct. 84, 82 L.Ed. 46, the statute of limitations prevents such recoupment, offset, or statutory credit.

We do not think the principles set out in Bull v. United States, supra, are applicable to the case at bar. In the Bull case the identical sum of money was involved, growing out of the same transaction. Two men operating as partners had had an agreement that in the event of the death of either, the legal representatives of such deceased partner should have the option of participating in the income of the partnership for one year after such death. One of the partners died February 13, 1920. Prior to his death his part of the profits had been $24,000 for the year 1920. After his death, his portion of the profits was $212,000 for the remaining part of the year.

The Collector treated the $212,000 as a part of the estate and collected an estate tax thereon. Thereafter in July 1925 the Collector determined that the $212,000 returned in 1920 should have been treated as income instead. He accordingly assessed a deficiency income tax of $55,000 plus interest for the year 1920 which was paid. Claim for refund was filed and rejected, and suit was filed for refund.

The court held that the $212,000 was properly treated as income, but permitted recoupment of the estate tax erroneously paid, notwithstanding limitation statutes. We quote [295 U.S. 247, 55 S.Ct. 700, 79 L.Ed. 1421]: "In July, 1925, the government brought a new proceeding arising out of the same transaction involved in the earlier proceeding. This time however, its claim was for income tax. The taxpayer opposed payment in full, by demanding recoupment of the amount mistakenly collected as estate tax and wrongfully retained. Had the government instituted an action at law, the defense would have been good. The United States, we have held, cannot, as against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of their agent. United States v. State [Nat.] Bank, 96 U.S. 30, 24 L.Ed. 647. While here the money was taken through mistake without any element of fraud, the unjust detention is immoral and amounts in law to a fraud on the taxpayer's rights. What was said in the State [Nat.] Bank case applies with equal force to this situation. 'An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it was incurred is immaterial. * * * In these cases (cited in the opinion), and many others that might be cited, the rules of law applicable to individuals were applied to the United States' (pages 35, 36 of 96 U.S., 24 L.Ed. 647). A claim for recovery of money so held may not only be the subject of a suit in the Court of Claims, as shown by the authority referred to, but may be used by way of recoupment and credit in an action by the United States arising out of the same transaction."

It will be noted that the two taxes discussed in the Bull case involved not only the same transaction but the identical fund. It pertained to the recoupment of a tax illegal in toto in so far as the fund was concerned.

[1] Burnet, Commissioner, v. Thompson Oil & Gas Co., 283 U.S. 301, 308, 51 S.Ct. 418, 75 L.Ed. 1049; Huber v. United States, 16 F.Supp. 773, 83 Ct.Cl. 643, 647; Chisolm v. United States, 19 F.Supp. 274, 85 Ct.Cl. 199.

In the McEachern case, supra, the taxpayer had sold shares of corporate stock in 1924 for a profit of $295,000 payable in ten equal annual installments. After his death in 1928 the administrator continued to pay for the years 1928 to 1931, inclusive, income tax on the installments, whereas he should have reported as income for the year 1928 the capital gain included in the value of the unpaid installments at the time of decedent's death. The latter tax, however, was neither levied nor collected. Later the taxpayer sought to recover the overpayments in income tax for the years 1929 to 1931, inclusive. The Government sought as against such proper refund to recoup or offset the taxes which should have been paid in 1928, the levy and collection of which were then barred.

The court held that the Government could not prevent recovery by the taxpayer by pleading a barred claim. We quote [302 U.S. 56, 58 S.Ct. 85, 82 L.Ed. 46]: "We may assume that, in the circumstances, equitable principles would preclude recovery in the absence of any statutory provision requiring a different result. But Congress has set limits to the extent to which courts might otherwise go in curtailing a recovery of overpayments of taxes because of the taxpayer's failure to pay other taxes which might have been but were not assessed against him. Section 607 of the 1928 act * * * declares that any payment of a tax after expiration of the period of limitation shall be considered an overpayment, and directs that it be 'credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim;' and section 609(a) of the 1928 Act * * * provides that 'any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 607.' These provisions preclude the government from taking any benefit from the taxpayer's overpayment by crediting it against an unpaid tax whose collection has been barred by limitation."

In the instant case two entirely different periods and two entirely different funds or transactions were involved. The taxpayer sought to offset against a tax properly levied on income arising from sale of property in 1932, what she claims were overlevies on income for the several years prior to 1929.

The question is: Do the limitation statutes prevent the allowance of such offset or recoupment?

Section 607, 26 U.S.C.A. Int.Rev.Acts, page 459, is of limited scope and does not apply to the facts of the instant case.

Section 608 of the Revenue Act of 1928, 45 Stat. 791, 874, 26 U.S.C.A. Int.Rev.Acts, page 459, is in part as follows:

"A refund of any portion of an internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) made after the enactment of this Act, shall be considered erroneous—

"(a) if made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; * * *."

Section 609, 26 U.S.C.A. Int.Rev.Acts, page 460, of the same act reads in part as follows:

"(b) Credit of Barred Overpayment. A credit of an overpayment in respect of any tax shall be void if a refund of such overpayment would be considered erroneous under section 608.

"(c) Application of Section. The provisions of this section shall apply to any credit made before or after the enactment of this Act."

Plaintiff's facts come so squarely within the terms of these two sections when construed together, that to permit recovery by way of recoupment under the facts as disclosed by the record would be tantamount to judicial repeal of the statutory limitation provisions enacted by the Congress.

The various revenue acts from 1921 to 1932, inclusive, made provision for refund or credit of the overpaid portion of any income tax and set a time limit within which claims for such refund or credit must be filed.[2]

---

2 Sec. 322 of the Revenue Act of 1928, 45 Stat. 791, 861, 26 U.S.C.A. Int.Rev. Acts, page 436; Sec. 284 of the Revenue Act of 1926, 44 Stat. 9, 66, 26 U.S.C.A. Int.Rev.Acts, page 220; Sec. 279 of the Revenue Act of 1924, 43 Stat. 253, 300, 26 U.S.C.A. Int.Rev.Acts, page 61; and Sec. 252 of the Revenue Act of 1921, 42 Stat. 227, 268. Sec. 322 of the 1928 Act, in substantially the same form, was carried forward in the Revenue Act of 1932 as Sec. 322, 47 Stat. 169, 242, 26 U.S.C.A. Int.Rev.Acts, page 571.

Plaintiff at no time filed a claim for refund of the alleged overpayment of taxes for the years prior to 1929.[3] She had the privilege of filing an application for a refund during those years and in the event of rejection to file timely suit therefor. Any rights which plaintiff had could have been protected through the remedy provided. If she had a right to an allowance for depreciation under the statutes in force at that time it could have been established. If the right to a refund could not have been established under the statutes then in effect plaintiff cannot properly claim recoupment now.

If the clear provisions of section 609 do not apply in the instant case it would be difficult to find one in which they would apply.

If plaintiff is permitted to recover by way of recoupment for distant years, then any taxpayer, so long as he is paying current taxes, may recover by way of recoupment for taxes overpaid in any year, however long past, and regardless of any limitation statutes that might otherwise apply. The entire field would be opened up both for the taxpayer and the Government.

We are not unmindful of the merits of the principle of recoupment nor of the measure of justice which it permits.

But there is also a reason behind limitation statutes. Frequently records are lost and memories fade as to transactions long past. Facts are frequently then difficult of proof. Limitation statutes are enacted for the benefit of the taxpayer as well as the Government. While they are sometimes harsh in their operation, they more frequently operate to terminate what might otherwise be almost endless litigation and consequent confusion. There must be sometime a finality to tax levy as well as tax adjustment.

■ At any rate, the Congress, in its discretion and within its province, has enacted these provisions. We are not privileged to suspend or apply them at will, nor to shape them to our notion of the ends of justice.

The plaintiff is not entitled to recover and the petition must be dismissed.

It is so ordered.

---

[3] United States v. Felt & Tarrant Co., 283 U.S. 269, 270–273, 51 S.Ct. 376, 75 L.Ed. 1025.