584

**ROTENBERG v. SHEEHAN et al.**

**COHEN v. UNITED STATES (two cases).**

Nos. 1805, 1879, 1880.

District Court, E. D. Missouri, E. D.
Jan. 8, 1943.

Abraham Lowenhaupt and Irl B. Rosenblum, both of St. Louis, Mo., Arnold Just, of St. Louis, Mo., of Counsel, for plaintiffs.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., and E. E. Angevine, Sp. Atty. Dept. of Justice, of Washington, D. C., for defendants.

COLLET, District Judge.

Action for the recovery of income taxes. The facts are as follows:

Prior to December 27, 1928, plaintiff was the owner of 251½ shares of the Puritan Oil Corporation which had cost him $9,633.69. On that date he gave his wife 125½ shares of this stock. On January 21, 1929, the Puritan Oil Corporation entered into a written agreement with the Sinclair Consolidated Oil Corporation by the terms of which the former agreed to sell and the latter agreed to buy all of the stock and assets of the former. The consideration was to be paid in capital stock of the Sinclair Consolidated and cash. The agreement provided that the Sinclair Consolidated should assume the payment of certain notes issued by Puritan and secured by deeds of trust on Puritan's assets. It was further agreed that, if directed to do so by Sinclair Consolidated, when the transaction was consummated Puritan would make the actual transfers of stock and assets to Sinclair Consolidated's subsidiary, the Sinclair Refining Company. The agreement further provided that in the event Sinclair Consolidated directed that the transfer be made to the Sinclair Refining Company, the obligations assumed by Sinclair Consolidated under the contract should be assumed by the Sinclair Refining Company. It was further provided that in the event Sinclair Consolidated directed the transfer to the Sinclair Refining Company that such direction so to do would constitute a guaranty by Sinclair Consolidated of the obligations transferred to Sinclair Refining Company.

The transaction was consummated on February 23, 1929. Sinclair Consolidated directed that the transfer of Puritan's stock and assets be made to the Sinclair Refining Company. The direction was carried out. The total amount of Sinclair Consolidated's stock which was to be exchanged for Puritan's stock had been transferred by the former to the Sinclair Refining Company and was by the latter transferred to Puritan's stockholders. In the latter transfer 137 shares of Sinclair Consolidated's stock went to plaintiff herein in exchange for his 126 shares of Puritan stock.

In plaintiff's 1929 tax return he reported the exchange of his Puritan stock for Sinclair Consolidated's stock as made in a "Reorganization or merger with Sinclair Consolidated Oil Corporation, see statement attached." The attached statement read:

"Samuel Rotenberg
                    Calendar Year 1929.
"Explanation of Item 11:

"Taxpayer owned 126 shares of the capital stock of the Puritan Oil Corporation, a corporation organized and existing under the laws of the State of Missouri, with an authorized issued and outstanding capital stock of $250,000.00 divided into 2500 shares of the par value of $100.00 each.

"In January, 1929, the Puritan Oil Corporation in pursuance to a plan of reorganization or merger conveyed all of its assets to the Sinclair Consolidated Oil Corporation and the stockholders of the Puritan Oil Corporation received in exchange therefor certain shares of stock, bonds and cash from the Sinclair Consolidated Oil Corporation—your taxpayer's proportionate share thereof being as follows, to-wit:

"137 shares of the 8% preferred capital stock of the Sinclair Consolidated Oil Corporation,
      *      *      *      *      *"

The stock exchange was treated by the taxpayer and the Collector as a transaction between parties to a reorganization, with the result that pursuant to Section 112(i) (1), Section 112(i) (2) and Section 112(b) (3) of the Revenue Law of 1928,[1] the original cost of the Puritan stock was treated as the value of the acquired Sinclair Consolidated stock and no tax was assessed or paid.

Plaintiff exchanged the Sinclair Consolidated stock for other stock in the same corporation. That exchange is of no importance here.

In 1938 plaintiff sold the Sinclair Consolidated stock for $15,861.85. In his tax return for that year he reported as long term gain the difference between the original cost of the Puritan stock ($4,799.33) and the sale price of the Sinclair Consolidated stock and paid the tax thereon. He concluded thereafter that his acquisition of the Sinclair Consolidated stock in the 1929 transaction was not in a reorganization or merger within the meaning of Section 112,

---

[1] 26 U.S.C.A. Int.Rev.Acts, pages 377, 379.

supra, and hence the Sinclair Consolidated stock should have been valued at the time of its acquisition by him in 1929 at its actual value, now stipulated to have been $15,035.75. Upon that theory he concluded that he had realized a long term gain of only $826.10, the difference between the foregoing figures, instead of a long term gain consisting of the difference between the original cost of the Puritan stock and the sale price of the Sinclair Consolidated stock. He made proper demand for the return of the alleged overpayment, the amount of which, on plaintiff's theory, is stipulated to be $1,161.67. That demand was refused and this action was brought to recover that amount.

The defenses interposed are, (1) that the 1929 transaction was between parties to a reorganization or merger within the meaning of Section 112, supra; (2) that if it was not the Government is entitled to set off against plaintiff's claim the amount of additional tax which would have been due in 1929 upon plaintiff's present theory, stipulated to be $1,908.38; (3) that plaintiff is now estopped to assert or contend that the 1929 transaction was not a reorganization or merger; and (4) that plaintiff has waived any right he may have had to assert that the Sinclair Consolidated stock was not acquired in a reorganization.

Undoubtedly, Sinclair Consolidated was a party to the transaction by which Puritan and Sinclair Refining Company were consolidated. Nor is there any question that both Puritan and Sinclair Refining Company were parties to a reorganization. But although Sinclair Consolidated was a party to the transaction it was not a party to the reorganization within the meaning of that term as defined in Groman v. Commissioner, 302 U.S. 82, 58 S. Ct. 108, 82 L.Ed. 63. If Puritan's stock had been transferred to Sinclair Consolidated, as one of the alternatives of the contract provided, the situation would be very different. Of course, Sinclair Consolidated was interested in the entire transaction in several different ways, but the question is not one of interest in the transaction. The question is, what was the result of what was actually done. If the result was a continuity of the proprietary stockholder interest in Puritan which was transferred to Sinclair Consolidated by the reorganization then Sinclair Consolidated was, in view of other circumstances noted, a party to the reorganization. But just as Glidden, which received none of Indiana's stock or assets in the Groman case, was not a party to the reorganization between Indiana and Ohio because the proprietary interest of the stockholders of Indiana was not transferred in substantial measure to Glidden, but came to rest in Ohio which had no proprietary interest in Glidden, so in the case at bar the stockholders' interest in Puritan did not flow through the Sinclair Refining Company into Sinclair Consolidated and thereby furnish the continuity of interest between Puritan and Sinclair Consolidated necessary to make the latter a party to the reorganization.

It is suggested here as it was in the Groman case that the separate identity of Sinclair Refining Company and Sinclair Consolidated be disregarded and realities recognized. But in the Groman case the Supreme Court cast aside that suggestion on the ground that to follow it would ignore the purpose of the reorganization statute. In the Groman case the Supreme Court pointed out that the interest of Indiana's shareholders, who stood in the same position there as Puritan's stockholders do here, assumed a different relation toward the conveyed assets of Indiana when the interest of those shareholders was converted into Glidden stock. The difference was that after the transfer they had only an indirect interest in those assets arising from their ownership of Glidden stock and no longer had their former direct interest which had passed to Ohio. The same situation must result from the facts in the case at bar. The Puritan stockholders' interest, as such, in Puritan assets came to rest and vested wholly in Sinclair Refining Company. The transfer of Sinclair Consolidated's stock to Sinclair Refining Company and by the latter to the Puritan stockholders did not continue in the latter the same proprietary interest in the Puritan assets which they had originally held, but created a new and different interest—an interest as stockholders in Sinclair Consolidated which directly owns no part of the Puritan assets. And the fact that Sinclair Consolidated may own Sinclair Refining Company does not, under the doctrine of the Groman case, eliminate the difference between those interests.

Defendant cites Schuh Trading Co. v. Commissioner, 7 Cir., 95 F.2d 404, in support of the contention that the separate identity of Sinclair Consolidated and Sin-

clair Refining Company should be disregarded. As heretofore pointed out, the reason for not disregarding the separate identity of Glidden and Ohio was made clear in the Groman case. The same reason would seem to have existed in the Schuh case. For that reason, in our humble judgment, the latter is not in accord with the Groman case and therefore cannot be followed.

■ It may be helpful to an understanding of the principle which controlled the Groman case to review the development of the "continuity of interest" theory in its application to Section 112, supra. It originated in the Pinellas case, Pinellas Ice & Cold Storage Co. v. Com'r, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428. Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 180, loc. cit. 182, 62 S.Ct. 540, 86 L.Ed. 775. In LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 316, 84 L.Ed. 355, the Supreme Court said: "Where the consideration [to the stockholder] is wholly in the transferee's [the acquiring party's] bonds, or part cash and part such bonds, we think it cannot be said that the transferor [the stockholder] retains any proprietary interest in the enterprise." Assuming that creditors of an insolvent corporation who had taken steps to enforce their demands prior to the actual sale of the corporation's interest at foreclosure did not possess a proprietary interest prior to the foreclosure sale at which they purchased, and their interest, acquired at the sale, was the result of a sale or transfer rather than a reorganization, in Commissioner v. Palm Springs Holding Corp., 9 Cir., 119 F.2d 846 and Helvering v. New President Corp., 8 Cir., 122 F.2d 92, it was held that there was not a continuity of the same character of interest before and after the foreclosure and hence no reorganization. In those cases the foreclosure sale was treated as both the instrumentality and the time of the extinguishment of the stockholders' interest and the beginning of the proprietary interest of the creditor-purchasers. But in Helvering v. Alabama Asphaltic Limestone Co., supra, the Supreme Court disapproved that conclusion, pointing out that by reason of the full priority rule the creditors became in reality the stockholders prior to the foreclosure when they invoked the processes of the law to enforce their rights of full priority. "At that time they stepped into the shoes of the old stockholders." Helvering v. Alabama Asphaltic Limestone Co., supra, 315 U.S. loc. cit. 183, 184, 62 S.Ct. loc. cit. 543, 86 L.Ed. 775. The Corporation representing the creditors' interest having the same proprietary interest of the former stockholders both before and after the foreclosure sale, the actual sale was an incident only of the reorganization of the creditor-owned stockholder interest.

It is clear from Helvering v. Limestone Co., supra, Palm Springs Corp. v. Com'r, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785 and Bondholders Committee v. Com'r, 315 U.S. 189, 62 S.Ct. 537, 86 L.Ed. 784, that the distinction between the Palm Springs and New President cases on the one hand and LeTulle v. Scofield on the other is that in the latter case the bondholder interest in a solvent company acquired by the stockholders from the transfer of their stock was an entirely different interest from the proprietary interest of the creditor in an insolvent company since the latter actually stood in the shoes of the stockholder and the bondholder in a solvent company did not.

■ The amount of unpaid taxes on independent transactions may not, after their collection is barred by the Statute of Limitations, be set off against claims for refund. McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46.

■ There was no misrepresentation or misconception of the facts when no tax was assessed on the transfer of the Sinclair Consolidated stock to plaintiff in 1929. The mistake was one of law which may not be made the basis of an estoppel. Helvering v. Williams, 8 Cir., 97 F.2d 810. The defense of waiver seems to have been abandoned.

■ The Sinclair Consolidated stock not having been received by plaintiff from a party to the reorganization in 1929, the actual value of that stock at the time of acquisition should be used for the purpose of determining gain or loss when that stock was sold in 1938. Since upon that basis plaintiff overpaid his 1938 taxes and has made timely demand for the return of the overpayment, he should recover. Judgment for plaintiff will be entered.