**AMERICAN LIGHT & TRACTION CO. v. HARRISON, Collector of Internal Revenue.**

No. 8368.

Circuit Court of Appeals, Seventh Circuit.

May 13, 1944.

640

A. F. Prescott, Sp. Asst. to Atty. Gen., John B. Stephan, Asst. U. S. Atty., of Chicago, Ill., Samuel O. Clark, Jr., Sewall Key, and Homer R. Miller, all of Washington, D. C., and J. Albert Woll, U. S. Atty., of Chicago, Ill., for appellant.

Ellsworth C. Alvord and Floyd F. Toomey, both of Washington, D. C., and Thos ·K. Humphrey, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff brought this action to recover $251,053.55 in income taxes admittedly overpaid for 1933. Although he admitted every allegation of fact contained in plaintiff's complaint, defendant endeavored to defeat recovery by affirmatively pleading that plaintiff had underpaid its taxes for 1928 by $342,180.50, the collection of which was barred by the statute of limitations. On being submitted to the court on a stipulation of facts, judgment was rendered for plaintiff. To reverse this judgment, defendant appeals.

The only issue here is whether plaintiff is entitled to recover the admitted overpayment of income taxes for 1933, even though the amount thereof is exceeded by a tax which should have been paid for 1928, the assessment of which is barred by the statute of limitations.

On July 6, 1928, Waverly Company, a wholly-owned subsidiary of plaintiff, acquired 50,000 shares of common stock of the Brooklyn Union Gas Company at a cost of $3,898,495.86. July 27, 1928, Waverly Company exchanged the stock for $6,750,000 face amount of 20-year debentures of Gregory Company, the stock of which was owned by outside interests. On that date the Brooklyn Union Gas Company stock had a fair market value equal to the face amount of the debentures received in exchange therefor, and the debentures had a fair market value equal to the face amount thereof.

As provided in § 112 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 377 et seq., this exchange was a taxable transaction, so Waverly Company made a profit thereon of $2,851,504 constituting taxable income for the year 1928. But in the consolidated income tax return filed by plaintiff in 1928 (which included Waverly Company as well as other affiliated corporations), the profit of $2,851,504 was not reported because it was believed that the transaction was a tax-free reorganization. The Government's failure to collect the tax for 1928 was not caused by any misrepresentation or misleading silence on plaintiff's part, but resulted from an opinion of the General Counsel for the. Bureau which, in 1940, turned out to be erroneous under LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355.

It appears that prior to the expiration of the statute of limitations for 1928, plaintiff furnished the Commissioner of Internal Revenue with all relevant facts with respect to the exchange. The commissioner regarded it as a non-taxable reorganization so no taxable gain was recognized. The period prescribed by the statute of limitations, as extended by waivers, for the assessment and collection of income taxes due from plaintiff and its affiliated corporations for 1928 expired on December 31, 1932.

During the years 1930 and 1931, Waverly Company sold $2,651,470 face amount of debenture bonds of Gregory Company, receiving therefor $2,651,470 in cash. These 1930 and 1931 sales were among the transactions involved in American Light & Traction Co. v. Commissioner, 42 B.T.A. 1121, affirmed, 7 Cir., 125 F.2d 365, in

which it was held that the July 27, 1928, exchange was a taxable transaction; that for the purpose of determining gain or loss on subsequent disposition, the basis of Gregory Company bonds in the hands of Waverly Company was the cost, and that since the cost of the bonds was equal to the face thereof, no gain was realized from the sale of the bonds in 1930 and 1931.

During 1933 Waverly Company sold the rest of the debenture bonds of Gregory Company, receiving therefor $4,098,530 in cash. In its consolidated income tax return for 1933, plaintiff erroneously included in taxable income on account of said transaction the sum of $1,731,403.76 and thereby overpaid its income taxes for that year by $251,053.55. After timely filing of a proper claim for refund and the rejection thereof by the commissioner, plaintiff brought this action against the Collector.

Defendant concedes that our previous decision has settled the question of estoppel against him, for we held there that this taxpayer was not estopped from urging that the 1928 transaction was taxable, 125 F.2d 365. But he now contends that the question here is not estoppel but recoupment (the word recoup is used in defendant's answer), i.e., that the Collector is entitled in equity to recoup against plaintiff's present claim, the taxes of $342,180.50 for 1928, which should have been paid on Waverly's profits on the exchange of stock for the debentures.

■ Since an action to recover a federal tax erroneously paid is in the nature of a common law action for money had and received and is governed by equitable principles, United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 402, 403, 54 S.Ct. 443, 78 L.Ed. 859, and since equitable principles would preclude a recovery in the instant situation, plaintiff could not recover if there were no statutory provisions involved. Here, however, there are such provisions which cannot be ignored.

■ Section 607 of the Revenue Act of 1928, 45 Stat. 791, 874, 26 U.S.C.A. Int.Rev.Code, § 3770(a)(2), which is significantly entitled "Effect Of Expiration Of Period Of Limitation Against United States," provides that any payment of a tax after the expiration of the applicable period of limitation shall be considered an overpayment and directs that it be "* * * credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." Under this section, any payment of the barred deficiency for 1928 would constitute an overpayment, the refund of which would be mandatory. Section 609 (a) provides that "Any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 607." 45 Stat. 875, 26 U.S.C.A. Int.Rev.Code, § 3775(a). Since the payment of the barred deficiency for 1928 would constitute an overpayment under § 607, it necessarily follows that any credit of the 1933 overpayment against that barred deficiency would be void under § 609(a). In the light of these provisions, the only possible conclusion is to affirm the District Court's judgment for the plaintiff. Any other result would effect a judicial repeal of the Act of Congress.

Controlling authority is found in McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 85, 82 L.Ed. 46, for the principle enunciated therein is clearly applicable here. There, the taxpayer sold shares of corporate stock in 1924 at a profit of $295,000, payable in ten equal annual installments. After his death in 1928, the administrator continued for the years 1929 to 1931, inclusive, to pay income tax on the installments, whereas under the pertinent statute he should have reported as income for the year 1928 the capital gain included in the value of the unpaid installments at the time of the decedent's death. After the assessment of the tax for 1928 was barred by the same statute of limitations which is applicable here, the taxpayer sought to recover the overpayments for the years 1929 to 1931, inclusive. The Government contended that the taxpayer "* * * was not entitled to recover the overpayments for those years, since they were less in amount than the tax which should have been assessed against him for 1928." Except that the word recoupment was not used, the contention was precisely the same as that advanced here. In holding that the taxpayer was entitled to recover the admitted overpayments despite the barred deficiency for the earlier year, the Supreme Court stated that "* * * in the circumstances, equitable principles would preclude recovery in the absence of any statutory provision requiring a different result. But Congress has set limits to the

extent to which courts might otherwise go in curtailing a recovery of overpayments of taxes because of the taxpayer's failure to pay other taxes which might have been but were not assessed against him. * * *" [Sections 607 and 609(a)] "* * * preclude the Government from taking any benefit from the taxpayer's overpayment by crediting it against an unpaid tax whose collection has been barred by limitation." 302 U.S. at pages 59, 60, 58 S.Ct. at page 86, 82 L.Ed. 46.

"The similar treatment accorded by the statutes to credit against an overdue tax, and to payment of it; the prohibition of credit of an overpayment of one year against a barred deficiency for another; and the requirement that payment of a barred deficiency shall be refunded, are controlling evidences of the congressional purpose by the enactment of §§ 607 and 609 to require refund to the taxpayer of an overpayment, even though he has failed to pay taxes for other periods, whenever their collection is barred by limitation." 302 U.S. at page 62, 58 S.Ct. at page 87, 82 L.Ed. 46.

In the McEachern case, as here, the overassessments for subsequent years resulted from a mistaken treatment of a transaction in an earlier year. There, as here, the barred deficiency for the earlier year exceeded the admitted overpayments for the later years. There, as here, whether it be called recoupment, offset, equitable credit, or some other term, the Government's contention was the same, and it is clear that the difference between the defense urged there and that urged here is purely verbal.

■ In a footnote in its brief defendant points out that in the McEachern case recoupment was not pleaded as such, that the taxpayer urged in his brief that since recoupment was not pleaded or proved in the lower court it was not an issue, and that the Supreme Court did not use the word recoupment in its opinion. This does not alter the fact that the court did pass squarely upon the substance of the defense, regardless of the name by which it was called, and it is probable that the Court did not attach much importance to the label affixed to the Goverment's defense. If the McEachern case had only the very narrow scope which the Government seeks to give it, so that the decision hinged purely on a narrow and technical point of pleading, it is certain that the

opinion would have discussed it. When defendant speaks of recoupment, he means the *credit* of an overpayment for one year against a barred deficiency for another year. Section 609(a) of the statute expressly prohibits the *credit* of an overpayment for one year against a barred deficiency for another year. Since recoupment means credit, it is obvious that defendant is asking us to do that which is expressly prohibited by the statute. Other courts have interpreted the McEachern case in the same manner, holding that recoupment means credit or that the word credit as used in the statute includes recoupment, so that no recovery is possible. Thus in Grand Central Public Market v. United States, D. C., 22 F.Supp. 119, 130, appeal dismissed, 9 Cir., 98 F.2d 1023, the court said: "In this recent McEachern Case it was held that the equitable defense of set-off, unjust enrichment, or recoupment is not available to the government if the application of such a defense would result in crediting a later overpayment upon a barred tax liability."

And in Lyeth v. Hoey, 2 Cir., 112 F.2d 4, 8, 130 A.L.R. 830, the court stated: "The defendant's right of recoupment or credit is precluded by statute and the plaintiff is entitled to recover the amount of his overpayment without abatement."

Besides the two cases just cited, other opinions have taken the same view of this statute and the force of the McEachern case, for example, Hall v. United States, Ct.Cl., 43 F.Supp. 130, certiorari denied, 316 U.S. 664, 62 S.Ct. 1105, 86 L.Ed. 1776; Rotenberg v. Sheehan, D.C., 48 F. Supp. 584; and Crawford v. Heiner, D.C., 23 F.Supp. 240.

■ The two Supreme Court authorities cited by defendant were decided prior to the McEachern case. If there is a conflict, it is clearly our duty to follow the latest case. But the earlier cases are readily distinguishable from the instant case. In Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, the instant limitations statute was not involved, and the estate tax and the income tax not only arose out of the same transaction but were imposed on the identical moneys, so that the same receipt was made the basis of both income and estate tax. In our case two entirely different taxable periods are involved, and the tax is not laid on the same fund. In Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265,

different taxpayers were involved and the commissioner could not credit the overpayment of one against the deficiency due from the other, so §§ 607 and 609(a) did not apply. Moreover, the two taxes involved related to the same fund. The Stone case is distinguished in the McEachern case, 302 U.S. 56, 62, 63, 58 S.Ct. 84, 82 L.Ed. 46, and the distinctions there pointed out also distinguish it from our case.

Nor do the lower court decisions which defendant cites persuade us to reach a different result. Crossett Lumber Co. v. United States, 8 Cir., 87 F.2d 930, 109 A.L.R. 1348, was decided prior to the McEachern case. One of the cases relied upon therein was Rose v. McEachern, 5 Cir., 86 F.2d 231, which the Supreme Court reversed, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46. Gooch Milling & Elevator Co. v. Commissioner, 8 Cir., 133 F.2d 131, which relied strongly on the Crossett case, was also reversed, 320 U.S. 418, 64 S.Ct. 184. Furthermore, in that case the statutes involved were not the same as the instant statute, and the opinion is largely confined to the problem of the jurisdiction of the Board of Tax Appeals. As for Dixie Margarine Co. v. Commissioner, 6 Cir., 115 F.2d 445, we have the Solicitor General's statement for the fact that "* * * the rule of the McEachern case was not considered by the court nor was the decision even cited by the Government prior to the Government's petition for rehearing in the Circuit Court of Appeals." Dunigan v. United States, 87 Ct.Cl. 404, 23 F.Supp. 467, was factually more similar to the Bull case than to the McEachern case, and in the light of what the Court of Claims said in its later opinions in Hall v. United States, Ct.Cl., 43 F.Supp. 130, and Mohawk Rubber Co. v. United States, 25 F.Supp. 228, 232, 88 Ct.Cl. 50, there is some doubt as to whether that court would follow the Dunigan case. The McEachern case was not mentioned in Mills v. United States, D.C., 35 F.Supp. 738, and the factual situation in the Mills case was different from the instant case. Hence the Mills case is not persuasive here.

Because income taxes are levied on the basis of annual returns for fixed accounting periods defined in the statute as the "taxable year," 26 U.S.C.A. Int.Rev.Code, §§ 41, 48, and the substantive and procedural provisions of the revenue laws, including statutes of limitation, are accommodated to this fundamental concept, there may be inconsistent results in some situations. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Probably moved by the desire to stimulate voluntary payment of taxes by giving the taxpayer an immediate refund right free from the danger that it would be credited against any stale deficiency, Congress enacted the instant statutory provisions. At any rate, Congress did enact these provisions which we are not free to suspend or apply at will, nor to shape to our notion of the ends of justice. Although here a hardship on the Government results from the taxpayer's inconsistency, the correlative provisions of this same statute will, in the converse of the instant situation, work an equal hardship on the taxpayer. Hall v. United States, Ct.Cl., 43 F.Supp. 130. In the instant case, our power to construe the statute is narrower than usual and closely circumscribed, because the Supreme Court has given an authoritative interpretation in the McEachern case.

The judgment is affirmed.

EVANS, Circuit Judge (dissenting).

I have not been able to fully and satisfactorily reconcile the opinion in the McEachern case with the opinion in the Bull case, both notwithstanding the clarifying discussion in the majority opinion. At least I am not prepared to accept the controlling effect of the McEachern opinion on the previously-decided Bull case. In the Bull case [295 U.S. 247, 55 S.Ct. 695, 700, 79 L.Ed. 1421], strong language was used condemning the Government for opposing the allowance of the equitable practice of recoupment or set-off. It was said, "While here the money was taken through mistake without any element of fraud, the unjust retention (by the Government) is immoral and amounts in law to a fraud on the taxpayer's rights. * * * Retention of the money was against morality and conscience."

In the McEachern case, if we look behind the verbiage where niceties of distinction are somewhat hidden, the conclusion is inescapable that the Government was not permitted to invoke the recoupment or set-off doctrine against a tax-

644

payer who attempted to enforce his claim for overpayment of an income tax. I can not believe that the application of the recoupment or set-off doctrine turns upon who makes the claim for its application.

That the inferior courts have been quite generally confused by the two holdings is shown by the fact that the following cases have accepted the recoupment theory as announced in the Bull opinion. Crossett Lumber Co. v. United States, 8 Cir., 87 F.2d 930, 109 A.L.R. 1348; Gooch Milling Co. v. Comm., 8 Cir., 133 F.2d 131, reversed 320 U.S. 418, 64 S.Ct. 184; Mills v. United States, D.C., 30 F.Supp. 738; Dunigan v. United States, 23 F.Supp. 467, 87 Ct.Cl. 404; See also, Virginia Law Review, March, 1942.

In other cases (Hall v. United States, Ct.Cl., 43 F.Supp. 130; Lyeth v. Hoey, 2 Cir., 112 F.2d 4, 130 A.L.R. 830; Mohawk Rubber Co. v. United States, 25 F. Supp. 228, 88 Ct.Cl. 50; Rotenberg v. Sheehan, D.C., 48 F.Supp. 584) the McEachern opinion controls.

The Government argues that the McEachern case turned on the pleadings, no set-off or recoupment having been pleaded. The Commissioner, we infer, continues to apply the Bull case. The taxpayers also rely on the Bull case if they be benefited thereby but accept the McEachern decision if the Government is relying on recoupment. In other words, the Government here seeks to apply the doctrine of the Bull case there announced as follows: "A claim for recovery of money wrongfully exacted as taxes may be used by way of recoupment and credit in an action by the United States arising out of the same transaction, and this even though an independent suit against the Government to enforce the claim would be barred by the statute of limitations."

Counsel for taxpayer argue, on the other hand, that the cases which have not followed the McEachern holding since its announcement were either wrongfully decided or the opinion in the McEachern case was not called to said courts' attention. Other cases which hold contrary to their contention were decided before the McEachern opinion was announced and must be viewed as overruled. And finally counsel for taxpayer contend, and with force, that whether the effort to reconcile the Bull and the McEachern cases be persuasive or successful, the McEachern ruling is the later holding and inferior Federal courts must follow the latest decision of the Supreme Court.

This opinion is written to emphasize the necessity of further enlightenment by the Supreme Court—the only court that can clear the atmosphere with finality. The situation as it now exists, is vexatious, perplexing, and confusing. (Article by McConnell, Virginia Law Review, March, 1942.)

I am inclined to accept, because the fairest, the doctrine which permits either taxpayer or the Government to set off or recoup any valid claim he or it may have against the other. In other words, if the taxpayer has overpaid his taxes one year and has a deficiency tax on a subsequent year, then he should be permitted to set off the same. The same should apply if the situation is reversed and the taxpayer is seeking to recover on an overpayment which is off-set by a sum he owes as a deficiency in another year. It would in my opinion seem unnecessary and illogical to require a showing that the two claims arose out of the same transaction, save as the statute of limitations may affect the situation.

Here, it seems to me that the facts do involve, or at least arise out of, the same transaction. It may not be as clear a case of identity of transaction as the Bull case. In the Bull case, however, it is worthy of note that it was an inheritance tax overpayment which was being offset against an income tax deficiency. The transaction out of which the taxes arose was the same, but an inheritance tax overpayment gave rise to a cause of action quite different in several respects from a cause of action arising out of income tax deficiency assessment. But the court refused to recognize any such distinction in the nature of the causes of action as sufficient to prevent the application of the recoupment doctrine.

In the instant case it might be said that the claim of the Government in re 1928 income taxes and the taxpayer's 1933 overpayment of income taxes both turn on a mutual mistake as to the character of the alleged reorganization by which there was an exchange in 1928 of the fifty thousand shares of Brooklyn Union Gas Company stock for $6,750,000 debenture bonds. It was, I believe, solely due to this mistaken conception on the part of the taxpayer and the Commissioner of Internal Revenue concerning the

legal effect of the 1928 exchange of securities that the plaintiff avoided the $342,-180.50 which was in fact due and owing by it as income taxes for the year 1928.

It also seems to me clear that plaintiff's payment in 1933 of income taxes in excess of the amount due from it to the Government, of $251,053.55 was due to, and arose from, a mistaken conception of the effect of said exchange of securities. The confusion in both instances arose out of the construction and application of the tax exempt reorganization statute which had been recently enacted and not judicially construed.

In other words, in both instances, liability arose because of a misconception of the legal effect of the so-called, but erroneously termed, tax exempt reorganization which took place in 1928. The transaction was there believed to be, but was not, a tax exempt reorganization. It is true the transaction by which the individual transactions which resulted in a profit, occurred in different years. So it was in the Bull case. On the other hand, it was the original theory of the taxpayer which the Government accepted which resulted in the escape of taxes in 1928. Plaintiff is perhaps correct in saying that it is not responsible for the defendant's mistakes and that no deception was by it practiced. Taxpayer only made a legal contention which the Commissioner accepted, and which was in fact erroneous. Likewise, the taxpayer in 1933, misconstrued the reorganization statute and its overpayment arose through an erroneous assessment. However, in each instance, the sale was a part of a transaction which, in 1928, was first construed by taxpayer and the Commissioner as a tax exempt reorganization.

Moreover, the transaction in each case was the sale of debentures which were transferred as a part of the alleged tax exempt reorganization. In one sense, the 1933 transaction and the 1928 transaction were separate and independent. On the other hand, looking at the matter broadly and ignoring the form, I believe it was a closely related transaction which was a part of an alleged reorganization whereby the companies involved sought to end their joint holdings. See fact recital in United Light & Power Co. v. Commissioner, 7 Cir., 105 F.2d 866.

I confess that I am troubled by the effect of the Act of 1938. What did Congress intend by the last section of this amendment, when it said: "(f) * * * No adjustment shall be made under this section in respect of any taxable year beginning prior to January 1, 1932"? Section 820(f), 26 U.S.C.A. Int.Rev.Code, § 3801(f).

Did this amendment result in the denial of a right or the grant of a right?

It would seem to me that it was a clarifying statute, and so far as it applied, there was a time limit, to-wit, January 1, 1932, beyond which it did not go. If a right existed beyond that time or after, this statute added nothing. It applied only if no right existed, or if there was doubt and its application was limited to adjustments made after January 1, 1932.

In other words, it did not enlarge or lessen any right which accrued before January 1, 1932. If the Bull case governed the facts in this case, it was not affected by this Act, nor can this Act be invoked to make a case which did not exist before January 1, 1932.

We therefore return to the question of whether the two tax errors arose out of the same transaction. If they did, then the Bull case governs. If not, the application of the McEachern opinion enters the picture and we must decide the extent to which recoupment is limited and the effect of the limitation sections. Or was the McEachern opinion written on a background of on recoupment *pleaded*? Believing as I do that the 1933 tax overpayment grew out of the same transaction as resulted in the 1928 non-payment of a tax due, I apply the Bull case.

I also think the disputed questions should be settled by the Supreme Court. Then inferior courts, the U. S. Tax Court, all taxpayers, and the Government will thereby be made happy, or at least less unhappy and less disputant.