GEORGE P. PITKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 65173.   Promulgated October 23, 1934.

*Robert N. Anderson, Esq.,* and *J. Nelson Anderson, Esq.,* for the
petitioner.

*Harold Allen, Esq.,* for the respondent.

#### OPINION.

ARUNDELL: This controversy relates to income taxes for the year
1929 in the amount of $3,989.05.   The only issue involved is whether
or not the petitioner received a taxable dividend of $37,785.54 from
the City National Bank & Trust Co., a corporation, in 1929.

The main facts are stipulated, but some oral testimony was intro-
duced at the hearing showing the following situation: The peti-
tioner, a resident and citizen of the State of New Jersey, was, prior
to March 4, 1928, one of a group owning 82.1 percent of the stock
of the City National Bank & Trust Co., a New Jersey corporation,
hereinafter referred to as the Bank.   These stockholders collectively
owned 86.87 percent of the stock of another New Jersey corporation
known as the Bankers' Securities Co., hereinafter referred to as the
Securities Co.   The Securities Co. was a stockholding company and
owned more than 51 percent of the stock of seven banks.

On March 4, 1928, the State of New Jersey enacted legislation
making it unlawful for corporations, other than New Jersey banks
and trust companies, to own more than 10 percent of the stock of
more than one other banking corporation, except in cases where the
entire capital stock of all corporations involved should be held by
the same stockholders in equal ratios.

After passage of the above mentioned legislation, the stockholders
of the Bank and the Securities Co. deemed it to their interests to
realign and change their corporate affiliations, which, according to
the stipulations made a part of this record, was carried out in the
following manner:

Upon the passage of this act it became necessary to take steps to bring the Securities Company within the exception, if it was to continue to do business. Accordingly, a plan was devised and approved by the stockholders and directors of both the Bank and the Securities Company, whereby the capital stock of the Bank was increased from $100,000 to $200,000, by the issuance of 1,000 additional shares. The new shares were sold to the old stockholders, in proportion to the old shares held, for $250 per share, and, in accordance with the plan, the Bank then declared a special dividend of $100 per share on each of the 2,000 shares which dividend was paid on July 30, 1929.

In accordance with the agreement with the stockholders, the dividend was paid, not to the stockholders, but to a committee of the stockholders of the Bank, which, in accordance with the agreed plan, organized a new corporation, the City National Company, with an authorized capital stock of $200,000, and the committee purchased the entire issue for the stockholders of the Bank, using the dividend money for the purchase. When this was accomplished, both the Bank and the City National Company had outstanding stock of $200,000, and each stockholder held stock in each of the two corporations in the same relative proportion.

The stock of the Bank and of the new corporation was turned over to trustees, who issued depository receipts therefor and it was understood and agreed that no stock in the new corporation could be sold unless a like amount of Bank stock was sold, and vice versa.

It was intended that the new corporation (the City National Company) would purchase the assets of the Securities Company for a sum not less than $184,800 and then to liquidate the Securities Company and pay each stockholder $120 per share. There were holders of 25 shares of the Securities Company stock, however, who objected and prevented the plan from being carried out in that manner, so instead of purchasing the assets of the Securities Company, the City National Company purchased 1,503 shares of the Securities Company stock out of the total of 1,540 shares outstanding. Of the 37 shares, not purchased, 12 were qualifying and the other 25 were owned by the objectors.

Included in their stipulation the parties have set forth a table showing the Bank's financial situation on certain dates and indicating how this transaction was treated in the books of the Bank. This table and statement of the transactions follows:

|  | Mar. 11, 1929 | Mar. 26, 1929 | Mar. 27, 1929 | July 30, 1929 |
|---|---|---|---|---|
| Liabilities: | | | | |
| Capital | $100,000.00 | $100,000.00 | $200,000.00 | $200,000.00 |
| Surplus | 130,000.00 | 130,000.00 | 130,000.00 | 140,000.00 |
| Undivided profits | 50,822.04 | 50,822.04 | 200,822.04 | 2,867.63 |
| Stock subscriptions | 1,000.00 | 250,000.00 | | |
| Other liabilities | 3,466,388.53 | 3,412,737.55 | 3,394,373.90 | 3,926,415.29 |
| Total liabilities | 3,748,210.57 | 3,943,559.59 | 3,925,195.94 | 4,269,282.92 |
| Resources: | | | | |
| Total resources | 3,748,210.57 | 3,943,559.59 | 3,925,195.94 | 4,269,282.92 |

The petitioner, as the owner of 193 shares of the Bank stock, was entitled to purchase, and did purchase, another 193 shares for $250 per share in accordance with the plan of reorganization, so that on July 30, 1929 (the date on which the dividend was paid) he was the owner of 386 shares, and his share of the dividend was $38,600.

The respondent has determined that at the time the special dividend was declared and paid the Bank had earnings in its surplus and undivided profits accounts equivalent to 97.89 percent of the $200,000 distributed and that such amount was taxable to the stockholders. In the notice of deficiency respondent determined that 97.89 percent of the $38,600 received by petitioner, or $37,785.54, was taxable to him as a corporate dividend.

The petitioner concedes that $50,000 of the Bank's profits were distributed in the special dividend, and that to the extent that the $38,600 received by him shared in said sum, it may be properly taxed. He contends, however, that except as to the $50,000, the entire special dividend constituted a return of capital, and, therefore, was not taxable as income within the rule laid down in *Eisner* v. *Macomber*, 252 U. S. 189, and other cases cited.

The respondent relies upon section 22(a) and section 115(a) and (b) of the Revenue Act of 1928.[1]

Beginning with the Revenue Act of 1917 it has been the intent of Congress, as expressed in the successive taxing statutes, to remove from corporations the power to designate from what year's profits dividends should be deemed to be paid or the particular fund from which disbursement of dividends is made. *Douglas* v. *Edwards*, 269 U. S. 204. The application of the statute cannot be circumvented by a resolution declaring a distribution out of some fund other than earnings. *Albert J. Gifford*, 18 B. T. A. 795; affd., *sub nom Leland* v. *Commissioner*, 50 Fed. (2d) 523; *McCaughn* v. *McCahan*, 39 Fed. (2d) 3.

The design of the statute is to subject to tax distributions to stockholders so long as the corporation making the distributions has earnings realized subsequent to March 1, 1913. But the statute should not be given an interpretation so broad as to go beyond its obvious purpose and to bring about an entirely artificial result. In this case there was no intention on the part of the petitioner and the other stockholders of the Bank to increase the latter's surplus

---

[1] SEC. 22. GROSS INCOME.

(a) *General definition.*—" Gross income " includes gains, profits, and income derived from * * * dividends * * *.

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) *Definition of dividend.*—The term " dividend " when used in this title (except in section 203(a)(4) and section 208(c)(1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) *Source of distributions.*—For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 113.

and to turn over to the Bank for its own use the entire $250,000 paid in. This money was paid to the Bank for the very definite purpose of accomplishing the reorganization of the Securities Co., which reorganization was made necessary by a recent act of the legislature of New Jersey. The Bank was a conduit of $150,000 of the money rather than a recipient in its own right, as it was well and definitely understood by all parties when the money was paid to the Bank that it would forthwith be used for the purpose for which it was paid. All the details had been agreed to in writing before a single dollar was paid in to the Bank by its stockholders. The underlying principle in this proceeding is not unlike that in *Weaver* v. *Commissioner*, 58 Fed. (2d) 755. In that case it was stipulated that the stockholders of a corporation, in order to increase its working capital, paid in to it $100,000. They received no stock for the amount so paid in and a verbal understanding existed among them that at some future time the contributed sum would be returned to them. Three years later the whole amount was returned to the stockholders in the exact sums originally contributed. The Commissioner treated the amounts paid to the stockholders as dividends and the Board sustained his action. The court, after examining into the record in the *Weaver* case, reached the conclusion that the stockholders became creditors of the corporation when they made their payments and the amounts paid back to them were in reality in payment of loans and not dividends. It is equally true in the instant case that the amounts paid out by the Bank, exclusive of the $50,000 admittedly paid out of undivided profits, did not represent a dividend, but the repayment by the Bank of sums intrusted to it in order that it might use them as directed. The facts here are in some respects more favorable to the taxpayer than they were in the *Weaver* case, where the sum contributed was used in the business of the corporation for nearly three years. Here the money paid in represented cash out of the stockholders' pockets, while in the *Weaver* case it was largely made up of sums then appearing on the corporate books as credits to the stockholders' individual accounts from prior years' earnings and profits of the corporation. Under this interpretation of the facts we do not reach the point where the sums paid in by the stockholders to the extent of $150,000 ever in fact became a part of the permanent funds of the Bank, however they were accounted for on the Bank's books. Of the $200,000 paid to the stockholders only $50,000 was in fact a dividend, the balance being a return of money loaned for a specific purpose. Petitioner concedes the taxability of the $50,000 and we agree with him that the balance was not a dividend.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK, dissenting: Section 115 of the Revenue Act of 1928 provides that the term " dividend " means any distribution made by a corporation to its shareholders out of its earnings or profits accumulated after February 28, 1913, and it also provides, for the purpose of the act, " every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits." The City National Bank & Trust Co. distributed $200,000 of money belonging to it at a time when it had earnings or profits accumulated after February 28, 1913, amounting to at least $180,822.04. It seems clear to me that the distribution in question was a dividend within the provisions of the statute to the extent of $180,822.04.

STERNHAGEN, MATTHEWS, and LEECH agree with this dissent.