Charles H. Martin and Elizabeth K. Martin et al. v. Commissioner.
Charles H. Martin v. Commissioner
Docket No. 32497. *
United States Tax Court
1954 Tax Ct. Memo LEXIS 334; 13 T.C.M. (CCH) 1; T.C.M. (RIA) 54018; January 8, 1954
*334 Willard N. Van Slyck, Jr., Esq., Harold R. Schroeder, Esq., 720 National Bank of Topeka Building, Topeka, Kans., and Ralph F. Glenn Esq., for the petitioners. Melvin A. Bruck, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the years 1947 and 1948, as follows: Year
Docket No.
Deficiency
1948
32497
$ 644.94
1948
32498
632.00
1948
32499
598.40
1948
33571
563.76
1947
32500
3,179.83
1947
32501
3,135.33
1947
32502
3,013.48
1947
33570
3,033.51
The sole issue presented for our decision is whether certain payments made to the petitioners by the Martin Tractor Company, Inc., during 1947 and 1948, are taxable to the petitioners as dividends under section 115(a) of the Internal Revenue Code, as determined by the Commissioner, or whether, as the petitioners contend, the payments constitute the partial repayment of amounts which had been temporarily loaned to the corporation by the petitioners. Findings of Fact The facts which have been stipulated are found accordingly and are incorporated herein, together *335 with the exhibits annexed, by this reference. All of the petitioners are residents of Topeka, Kansas. They filed their returns with the collector for the district of Kansas at Wichita. Prior to August 29, 1947, Charles H. Martin, Fred P. Martin, Charles H. Martin, Jr., and Harold W. Gerlach were partners in a partnership doing business under the name of Martin Tractor Company, each having an equal 25 per cent interest in the partnership. In August 1947 the business of the partnership was acting as a distributor for Caterpillar Tractor Company and several other companies which produced heavy dirt-moving equipment and road building machinery. During the years the partnership was in existence, each of the partners filed individual income tax returns reporting his entire distributable share of partnership net income whether or not his entire share, each year, was distributed. Each paid in full his Federal income tax on his distributable share of partnership income. Fred and Charles Martin had been partners in the business since 1911, with the exception of the years 1928 to 1934. Gerlach became a partner in 1945. Charles Martin, Jr., became a partner in 1946. On August 29, 1947, Martin *336 Tractor Company, Inc., was incorporated under the laws of Kansas with authorized capital of $300,000. The first meeting of the directors (the four members of the partnership) of the new corporation was held August 29, 1947. At that time a resolution was passed accepting an offer of the partnership to convey assets to the new corporation, as outlined in a bill of sale. By bill of sale dated September 1, 1947, the members of the partnership transferred certain properties of the partnership to the new corporation in exchange for $252,000 of its stock which was issued in equal amounts, 630 shares, to the individual partners. The partnership was dissolved. The new corporation took over the operation of the business which the partnership had operated as of September 1, 1947. On August 31, 1947, the net book value of the partnership assets was $286,648.25. Of this amount, $252,000 was transferred to the corporation as consideration for the issuance of the capital stock as set forth above. The balance, amounting to $34,648.25, which was entered on the books of account of the corporation as "contributed surplus" for the reasons hereinafter set forth, was loaned to the corporation by the petitioners *337 to supply adequate working capital. The petitioners did not wish to put the entire net assets of the partnership into the permanent capitalization of the new corporation. However, it was their consistent desire to accomplish a tax-free reorganization within the meaning of section 112(b)(5), I.R.C., and various means of accomplishing this aim and supplying the corporation with adequate working capital were discussed by the petitioners, as members of the partnership, with their various attorneys and tax advisers. They considered the corporation's procuring a loan from a bank, the proceeds to be given to the partnership; they considered issuance by the corporation of notes to the partnership; and they considered handling the amount of the partnership assets which they desired to retain free from the permanent capitalization of the corporation as "contributed surplus" of the new corporation in accordance with their understanding of Weaver v. Commissioner, 58 Fed. (2d) 755. The idea of a bank loan to the corporation was discarded for the reasons that the petitioners were advised that such a plan might jeopardize the corporation's line of credit. The *338 issuance of notes to the petitioners by the corporation was discarded on advice of the petitioners' certified public accountant and tax adviser, and of the attorney for several of the petitioners, because it was felt that this method might jeopardize the status of the contemplated tax-free reorganization under section 112(b)(5) of the Code. On recommendation of their advisers the petitioners agreed to proceed according to their understanding of the Weaver case and to loan $34,648.25 to the corporation to be carried on the books of the corporation as "contributed surplus". All of the petitioners' advisers knew of the petitioners' desire to loan $34,648.25 of the partnership assets to the new corporation and they knew of the petitioners' desire to accomplish a taxfree reorganization within the meaning of Code section 112(b)(5). The course of action pursued by the petitioners was the product of the recommendations of their advisers. The petitioners intended that the amount loaned by them to the new corporation and carried on its books as "contributed surplus" would be repaid to them in the same proportions as their respective interests in the stock of the new corporation, and that *339 the amount would be repaid, if and when they, as the directors of the new corporation, felt that the working funds of the corporation would permit. No maturity date was set for such repayment and no interest was to be paid on the amount of the loan, nor was the transaction ever incorporated in any formal document as a loan. At a special meeting of the board of directors of the corporation, held on September 12, 1947, the directors authorized a distribution in the aggregate amount of $18,100; $4,525 to each shareholder. This distribution was to be charged against the "contributed surplus" account of the corporation. Actual distribution was accomplished during the remainder of the calendar year 1947. A similar distribution was authorized and accomplished during the calendar year 1948. This distribution was in the aggregate amount of $8,000, or $2,000 to each of the shareholders. This distribution was also charged against the "contributed surplus" account of the corporation. The 1947 distribution of $18,100 and the 1948 distribution of $8,000 were entered on the books of the corporation in the "liquidating dividend" account which is the contra account to the "contributed surplus" *340 account. During the corporation's fiscal year ended June 30, 1948, a distribution was authorized and made in the aggregate amount of $28,980, which was charged on the corporation's books to the "dividend [surplus]" account, which account shows dividends declared and paid from the "surplus [earned]" account. The taxable net income of Martin Tractor Company, Inc., for the fiscal year September 1, 1947, through June 30, 1948, was $160,771.57 as shown on lines 31 and 35 of its income tax return, Form 1120, filed by the corporation for the fiscal year. The taxable net income of Martin Tractor Company, Inc., for the fiscal year July 1, 1948, through June 30, 1949, was $200,549.02 as shown on lines 32 and 34 of its income tax return, Form 1120, filed by the corporation. Opinion The sole issue for our decision is whether certain payments made to the petitioners by the Martin Tractor Company, Inc., during the years 1947 and 1948 constitute taxable dividends as the respondent has determined, or whether the payments, aggregating $26,100, constitute the partial repayment of amounts temporarily loaned by the petitioners to that corporation. The facts surrounding the point in controversy *341 may be summarized, briefly, as follows: The petitioners had been doing business as equal partners in the Martin Tractor Company. They desired to reorganize their business as a corporation. The net book value of the partnership assets as of August 31, 1947 totaled $286,648.25. It was the desire of the petitioners to retain a portion of this amount free and clear of the permanent capital of the corporation which they intended to form. However, it was their desire to keep their reorganization within the meaning of section 112(b)(5) of the Internal Revenue Code, so that the reorganization might qualify as a tax-free organization. The petitioners were informed by their tax counsel that a portion of the net assets of the partnership could be kept clear of the permanent capitalization of the organization without jeopardizing the taxfree status of the reorganization by the means of a loan to be carried on the corporation's books as "contributed surplus". The advice of the petitioners' tax counsel was predicated upon their understanding of the authority contained in Weaver v. Commissioner, supra.Accordingly, certain of the assets of the partnership were *342 transferred to the corporation in consideration of the issuance by the corporation of stock in the aggregate par value of $252,000, and the balance of the partnership assets, $34,648.25, was transferred to the corporation and was carried on its books as "contributed surplus". To support their contention that the amounts in controversy constitute the partial repayment of a loan, the petitioners cite Weaver v. Commissioner, supra. That case involved the same issue with which we are presently concerned. In the Weaver case, the stockholders of a corporation operating as a going concern paid into the corporation, in proportion to their holdings, the sum of $100,000 in order to increase its working capital. The sum paid in was at all times carried on the corporation books as a separate account entitled "contributed surplus". At the time the sum was paid into the corporation, a verbal understanding existed among the stockholders that at some future date the amount would be returned to them. In January 1922, the corporation by special resolution returned the sum to the contributing stockholders. In holding that the sums returned to the stockholders constituted the repayment *343 of a loan and not taxable dividends, the court stressed the fact that each of the parties to the transaction understood that the sums advanced to the corporation were intended as a loan and not as a contribution to the permanent capital of the corporation. Whether the transaction here in controversy constitutes a loan to the corporation by the petitioners who were its sole stockholders, or was a contribution to capital is, of course, a question of fact to be decided upon the record as a whole, Wm. D. Moorer, 12 T.C. 270. In opposition to the petitioners, the respondent points to the continued use of the term "contributed surplus" in the formal documents surrounding the transaction as evidence that no debt between the corporation and the petitioners ever, in fact, existed. However, we cannot agree, for the petitioners by strong and convincing evidence have established to our satisfaction that the sum of $34,648.25 transferred to the corporation as "contributed surplus" was intended to be a loan which they expected to be repaid as soon as the corporation's working capital would permit. In attempting to distinguish the Weaver and the Moorer cases, upon which the petitioners *344 rely, the respondent points to the fact that both of the corporations involved in those cases were going concerns at the times the loans were made by the stockholders, and he argues that in these proceedings it is "quite feasible" to consider the amounts in controversy as part of the consideration for the stock issued to the petitioners by the new corporation. "Feasible" this may be, but the facts do not support the assumption. Furthermore, we believe the Weaver and the Moorer cases are not distinguishable. Since the evidence clearly establishes that the amounts paid to the petitioners during 1947 and 1948 constituted repayments in part of amounts loaned to the corporation, it necessarily follows that the sums paid are not taxable as dividends, Weaver v. Commissioner, supra; Wm. D. Moorer, supra; George P. Pitkin, 31 B.T.A. 403, unless the petitioners are precluded by law from asserting that the amounts received constituted the partial repayment of a loan. On this point, the respondent argues that by the transaction in controversy the petitioners attempted to give effect to two inconsistent intents, only one of which can now be recognized. In *345 other words, the respondent argues that by the use of the term "contributed surplus" the petitioners were asserting the non-taxability of the reorganization occurring in 1947 in order to escape taxation upon the gain, if any, realized and that a duty of consistency now prevents the petitioners from maintaining in these proceedings that less than all of the partnership assets were transferred to the corporation for the stock received. It should be noted that the deficiency notices in Docket Nos. 32497 to 32502, inclusive, were mailed to the petitioners on November 9, 1950, and in Docket Nos. 33570 and 33571, on January 16, 1951, and that each of these deficiency notices asserted as the sole basis for the determination of the deficiencies that the amounts received from the Martin Tractor Company, Inc., constituted taxable dividends within the meaning of section 115(a) of the Internal Revenue Code. Furthermore, the respondent has not pleaded in his answer, and does not assert upon brief, the technical defense of estoppel. Nor does it appear from the record that the respondent was misled by the use of the term "contributed surplus"; or that in 1950 and in 1951, *346 when the deficiency notices were issued, the respondent was unaware of the true state of affairs concerning the reorganization. Apart from the point that estoppel has not been pleaded, our decision in Richard K. Mellon, 12 T.C. 90, affd. 184 Fed. (2d) 157, is authority for not applying the doctrine of estoppel here. We said in the Mellon case (pp. 109, 110), as follows: "* * * Similar concessions and arguments were made by respondent in American Light & Traction Co., 42 B.T.A. 1121; affd. (CCA-7), 124 [125] Fed. (2d) 365. The Board in its opinion stated in part: "'* * * Since both parties have full opportunity to have the tax liability determined in accordance with the statutes, the statutory test should not be abandoned for a test based upon the ethics or morals of the conduct of one of the parties except under exceptional circumstances. Tide Water Oil Co., 29 B.T.A. 1208. The Board said in James Couzens, 11 B.T.A. 1040, that "such an argument must be treated with the utmost caution, since its sanction in any case would result in having an individual tax liability depend, not upon the factors and measures prescribed *347 by Congress as applicable to all, but upon the statements and conduct of a particular" person.' "In that case it was held that the taxpayer was not estopped to have its taxes for 1930 and 1931 determined in accordance with the statute where the Commissioner, with full knowledge of the facts, failed to collect taxes due for 1928 because he thought an exchange in that year was a reorganization and the gain not recognizable. To similar effect are: Ross v. Commissioner (CCA-3), 169 Fed. (2d) 483; Pancoast Hotel Co., 2 T.C. 362, 369; Mahlon D. Thatcher, 46 B.T.A. 869, 881 (reversed on another issue, 137 Fed. (2d) 128; Helvering v. Williams (CCA-8), 97 Fed. (2d) 810; United States v. Dickinson (CCA-2), 95 Fed. (2d) 65; Florida Machine & Foundry Co. v. Fahs, 73 Fed. Supp. 379; affd. (CCA-5), 168 Fed. (2d) 957." Upon the evidence, we take the view here that the petitioners are not estopped from making the contention that the distributions in question were prepayments, in part, of a loan to the corporation. The respondent's determinations are not sustained. Decisions will be entered *348 for the petitioners. Footnotes
*. The following proceedings have been consolidated: Docket No. 32498, Fred P. Martin and Charlotte J. Martin, Petitioners Docket No. 32499. Charles H. Martin, Jr., and Doris May Martin, Petitioners Docket No. 32500, Charles H. Martin, Petitioner Docket No. 32501, Fred P. Martin, Petitioner Docket No. 32502, Charles H. Martin, Jr., Petitioner Docket No. 33570, Harold W. Gerlach, Petitioner Docket No. 33571, Harold W. Gerlach and Hazel Gerlach, Petitioners.↩