Hugh SAMSON, Edith W. Samson and Hattie S. Halle, Plaintiffs,

v.

UNITED STATES of America, Defendants.

United States District Court
S. D. New York.
May 18, 1956.

M. S. & I. S. Isaacs, New York City, for plaintiffs. David Oppenheim, New York City, of counsel.

Paul W. Williams, U. S. Atty., for Southern Dist. of New York, New York City, for defendant. Arthur B. Kramer, New York City, of counsel.

HERLANDS, District Judge.

This is an action for refund of taxes paid for the calendar year 1948. The material facts are stipulated.[1] On the

---

1. (a) Gustavus Sidenberg died on January 22, 1915 leaving a will, which was admitted to probate by the Surrogate's Court of New York County.

(b) Pursuant to that will, decedent's residuary estate was divided into three equal trusts: the first, with income for life, to decedent's brother Henry Sidenberg, who died in 1925; the second, with income for life, to decedent's brother Richard Sidenberg, who died in 1932; and the third, with income for life to decedent's sister, Rosa Rich, who died in 1938.

question of law which remains, both sides move for summary judgment.

That question of law may be stated as follows:

On a sale in 1948 of depreciable property (a hotel) by trustees of a liquidating trust for the account of remaindermen (including these plaintiffs), must adjustment of the cost basis—for the purpose of determining gain or loss—be made for depreciation of the property during the period from February 1, 1915 (the approximate date of the creation of

(c) On the deaths of the respective life beneficiaries, the remainders passed to their issue, *per stirpes*.

(d) The principal asset of the residuary trusts was the equity in a hotel in New York City, located at 125th Street and 7th Avenue, known as the Hotel Theresa.

(e) Because the hotel could not readily be divided, the three trusts were administered *in solido* over the years, with the sanction of the Surrogate's Court of New York County.

(f) Under the direction of the Surrogate's Court, the hotel was continuously administered by the trustees, as liquidating agents for the remaindermen, even after the death of the last of the three equitable life beneficiaries.

(g) The hotel was sold in 1948 for the account of the remaindermen. Plaintiffs Hugh Samson and Hattie S. Halle, as issue of Henry Sidenberg, deceased, are two of the remaindermen of the trust held for his benefit during his life.

(h) The unadjusted cost basis of the hotel property (as of the date of death of Gustavus Sidenberg in 1915) as reported for Federal estate tax purposes was $963,416.01. The hotel was sold as of January 1, 1948 for $925,000 subject to a first mortgage of $397,500; with $100,000 paid in cash and $427,500 in the form of a purchase money second mortgage for a term of ten years.

(i) The liquidating trustees of the estate of Gustavus Sidenberg filed a Federal fiduciary income tax return on Form 1041 for the calendar year 1948 (Exhibit "B" attached to the complaint) listing the unadjusted cost basis of the hotel at $963,416.01, adjusted for "allowable" depreciation from—but not prior to—January 1, 1928 to January 1, 1948 in the aggregate amount of $270,212.14.

(j) The adjustment was predicated on straight line depreciation on the building of $8,760 per year. The balance of the depreciation adjustment was depreciation on equipment, etc., not in issue here.

(k) The sale of the hotel as of January 1, 1948 was on an instalment basis. The Federal fiduciary return for 1948, computed the percentage of annual receipts from the sale returnable as profit at 42.43 per cent.

(l) On an audit of the 1948 fiduciary return, the Internal Revenue Agent filed a report (dated January 18, 1950), the pertinent parts of which are attached to the Agent's letter, dated April 25, 1950 (Exhibit "C" attached to the complaint). The Agent's report (p. 5) stated, *inter alia:*

"To show the computation of the sale of the Hotel Theresa, the basis of which was reduced by depreciation computed at $8,760.00 per annum for 12 years and 11 months (2/1/15–12/31/27) depreciation was not deducted by the taxpayer. The result of said computation increased the gross capital gain by $113,150.00, the amount of the additional depreciation, and since this was an installment sale, the gross profit being .6388, therefore the reportable gain is now $89,432.00 as opposed to $59,402.00 per the 1041. Said amount is reportable by the beneficiaries and is not taxable to the trust, as it is in liquidation."

(m) The income of the trust in question was entirely distributable to the respective income beneficiaries entitled thereto between 1915 and 1928 and was reported by them pro rata on their respective income tax returns.

(n) The first year in which the amount of allowable depreciation on said hotel was in fact established by an agent of the then Internal Revenue Bureau and was deducted by the parties in interest under the will of Gustavus Sidenberg, was the calendar year 1934.

(o) The law of the State of New York, under which the estate was administered during the period in question, prohibited trustees of express trusts from setting up reserves for depreciation where, as here, the income was required to be entirely distributed, and the trust instrument contained no specific direction for maintaining depreciation reserves.

(p) The increase in the capital gain for the year 1948 was from $59,402 to $89,432. On the audit and review by the Commissioner of the 1948 joint income tax return of plaintiffs Hugh Samson and his wife, Edith W. Samson, an additional assessment was made against

the trust) up to January 1, 1928 (the effective date of section 23(k) of the Revenue Act of 1928, 26 U.S.C.A. (I.R. C.1939) § 23(*l*))?

The trust instrument did not require or empower the trustees to accumulate a reserve for depreciation. Similarly, under New York law governing such trust, the trustees could not properly accumulate a reserve for depreciation.

One of the major circumstances giving rise to the litigation is that the liquidating trustees did not make deductions for depreciation *for income tax purposes* during the period from February 1, 1915 up to January 1, 1928, the effective date of 23(k) of the Revenue Act of 1928. In explanation of their not deducting depreciation *for income tax purposes* during the 1915–1928 period mentioned, the trustees claim that such depreciation was not allowable for income tax purposes under the tax laws and regulations in force during that particular period. With that interpretation of the tax laws and regulations as their premise, the trustees then make the following argument: since depreciation was not allowable for income tax purposes during the particular period mentioned, the trustees were not required to take into account depreciation for that period in adjusting and determining the original cost basis of the hotel and in computing the profit on the sale of the hotel in 1948.

The Government's position is that the original cost basis of the hotel should be reduced to reflect depreciation for the thirteen-year period from February 1, 1915 to December 31, 1927, inclusive. In order to find that the Government's position is correct, it is only necessary for the Court to determine that a deduction for depreciation was *allowable* under the statutes applicable to those years. It is not necessary for such determination that depreciation shall have been actually *claimed* as a deduction for such depreciation to be considered as an adjustment of the original cost basis of the hotel.

The statute applicable to a sale of property in 1948—the year in which the hotel was sold—was Internal Revenue Code of 1939. Section 113(b) (1) (B)[2]

said plaintiffs, predicated in part on the inclusion as additional capital gain of their pro rata share of the said increase in capital gain from $59,402 to $89,432. The increase in plaintiff Hugh Samson's share of such capital gain was from $2,200.08 to $3,312.30, and the resulting increase in that plaintiff's income was $556.11.

(q) Due to an allowable tax deduction in the amount of $180.52, which had previously not been claimed by plaintiffs Hugh Samson and Edith W. Samson, the net adjustment on the joint income tax return of said plaintiffs on the review and audit of their 1948 return was $375.-59, and the resulting alleged deficiency was $85.94. The amount of additional tax attributable to said capital gain increase was $127, which was paid by said plaintiffs, together with interest of $25.11.

(r) Plaintiff Hattie S. Halle's pro rata share of the above-mentioned capital gain was increased from $3,300.11 to $4,968.45.

(s) Plaintiff Hattie S. Halle had originally included as taxable income $500 in dividends on stock of Pullman, Inc., received by her through the estate of J.

S. Halle, of which she was income beneficiary. She was thereafter advised that that dividend was a non-taxable distribution. Accordingly, she filed claim for refund of $369.60 attributable to this item.

(t) The Commissioner of Internal Revenue subsequently ruled that $488.65 of the Pullman, Inc. dividend was nontaxable. This resulted in a tax reduction to said plaintiff in the amount of $361.22.

(u) By reason of said dividend adjustment, the deficiency asserted against said plaintiff on account of said capital gain increase (crediting said adjustment as an offset) was $55.87, representing the original deficiency of $417.09 less the adjustment of $361.22. This deficiency, plus interest, was paid.

2. Section 113(b) (1) (B) of the Internal Revenue Code of 1939 provides that the adjusted basis for determining the gain or loss from the sale of property shall in all cases be made:

"(A) * * *;

"(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount—

of that Code, 26 U.S.C.A. § 113(b) (1) (B), required the adjusted cost basis— for determining the gain or loss from the sale of property—to reflect depreciation since February 28, 1913, the extent being not less than the amount "allowable" under the 1939 Code "or prior income tax laws."[3] It has been held that the adjusted cost basis should reflect "allowable" depreciation, notwithstanding the circumstance that a deduction for allowable depreciation would not have benefited the taxpayer taxwise, as where the taxpayer owned a depreciable property which produced no income and where he had no other sources of income.[4] Thus, the question to be decided is whether depreciation was "allowable" during the thirteen-year period in question.

The taxpayers' fundamental argument is that, during the thirteen-year period here involved, deductions for depreciation in computing taxable income could not have been taken by either the trustees or the income beneficiaries or the remaindermen because the trust was subject to the following two conditions: (1) under the express terms of the trust instrument, all of the income was required to be and was, in fact, distributed currently; and (2) under the laws of New York State, which determined the trust administration, a depreciation reserve was not authorized, in view of the fact that the trust instrument did not contain an express provision for such a reserve. Plaintiffs concede that, if they had been owners in fee simple of the property for the entire thirteen-year period, they would have been allowed to deduct depreciation and that, consequently, the adjustment of original cost basis now challenged would have been proper. United States v. Ludey, 1927, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054.

But the structure of plaintiffs' argument attacking the Commissioner's adjustment to reflect depreciation during the thirteen-year period, is built upon the proposition that, for the particular period, plaintiffs were beneficiaries of an express testamentary trust that was qualified and circumscribed by the two conditions specified above. In this connection, certain facts must be noted.

Plaintiffs are the remaindermen of the express testamentary trust created by Gustavus Sidenberg (who died in 1915) in favor of (inter alia) Henry Sidenberg (who died in 1925). Although the trustees continued to administer the trust *in solido* (because the hotel could not be divided readily), from and after Henry Sidenberg's death in 1925, these plaintiffs-remaindermen were never beneficiaries under the trust instrument,[5]

---

"(i) allowed as deductions in computing net income under this chapter or prior income tax laws, and

"(ii) * * *,

but not less than the amount allowable under this chapter or prior income tax laws. * * * "

3. Even prior to the enactment of the specific provision in the Internal Revenue Code requiring the cost basis to be adjusted to reflect depreciation to the extent "allowable," the same result had been reached by judicial decision. United States v. Ludey, 1927, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054.

4. Hardwick Realty Co., Inc. v. Commissioner, 2 Cir., 1928, 29 F.2d 498.

5. Paragraph "Ninth," subparagraph "b." of the will of Gustavus Sidenberg provided:

"Ninth:—I give and bequeath all the rest, residue and remainder of my estate, both real and personal, of every kind and nature, including all lapsed and void legacies, and the legacies and devises of any who may contest this Will, to my executors hereinafter named, upon the following trusts:

*    *    *    *    *

"(b) My executors, other than my brother Henry, to invest and reinvest one-third thereof, to collect and receive the rents and income thereof, and to pay such income to my brother Henry, during his life, and upon his death to pay over, transfer, and convey the said principal share to his issue in equal shares, per stirpes, and if there be no issue of his then living, then to my brother Richard and my sister Rosa, if they are living, and the issue of either who shall have died, per stirpes."

but were presumably owners in fee simple of an undivided one-third interest in the hotel when they took as remaindermen in 1925. Thus, as to them, the trustees were, in legal effect, acting not as trustees but as agents. Consequently, as to the period from Henry Sidenberg's death in 1925 to December 31, 1927,

there is no arguable basis for plaintiffs' challenge of the Commissioner's adjustment to reflect allowable depreciation. This narrows the scope of plaintiffs' challenge to the period from February 1, 1915 to the death of Henry Sidenberg in 1925.

Citing the applicable statutes [6] and six

6. During the period in which the adjustment for depreciation is disputed by plaintiffs (February 1, 1915 to December 31, 1927), the following seven Revenue acts were applicable for varying periods of time: the Revenue Act of 1913, 38 Stat. 114, 166 (1913–1915); the Revenue Act of 1916, 39 Stat. 756 (1915–1917); the Revenue Act of October 3, 1917, 40 Stat. 300 (1917–1919); the Revenue Act of 1918, 40 Stat. 1058 (1917–1919); the Revenue Act of 1921, 42 Stat. 227 (1921–1923); the Revenue Act of 1924, 43 Stat. 254 (1923–1925); and the Revenue Act of 1926, 44 Stat. 9, 26 U.S. C.A.Int.Rev.Acts (1925–1927).

A historical background of the early acts is found in Martens, Law of Federal Income Taxation (1942) Vol. 1, Section 1.03.

Defendant has cited the provisions of the Revenue Act of 1921, taxing trust income, as typical of the provisions in effect during the above period. Plaintiffs have not challenged this.

The relevant provisions of the Revenue Act of 1921, 42 Stat. 246, taxing trust income, were:

"Sec. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

"(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

"(2) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests;

"(3) Income held for future distribution under the terms of the will or trust; and

"(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

"(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212,

except that (in lieu of the deduction authorized by paragraph (11) of subdivision (a) of section 214) there shall also be allowed as a deduction, without limitation, any part of the gross income which, pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in paragraph (11) of subdivision (a) of section 214. In cases in which there is any income of the class described in paragraph (4) of subdivision (a) of this section the fiduciary shall include in the return a statement of the income of the estate or trust which, pursuant to the instrument or order governing the distribution, is distributable to each beneficiary, whether or not distributed before the close of the taxable year for which the return is made.

"(c) In cases under paragraphs (1), (2), or (3) of subdivision (a) or in any other case within subdivision (a) of this section except paragraph (4) thereof the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary, except that in determining the net income of the estate of any deceased person during the period of administration or settlement there may be deducted the amount of any income properly paid or credited to any legatee, heir, or other beneficiary. In such cases the estate or trust shall, for the purpose of the normal tax, be allowed the same credits as are allowed to single persons under section 216.

"(d) In cases under paragraph (4) of subdivision (a), and in the case of any income of an estate during the period of administration or settlement permitted by subdivision (c) to be deducted from the net income upon which tax is to be paid by the fiduciary, the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not, or, if his taxable year is different from that of the estate or

judicial decisions [7] allegedly supporting plaintiffs' statutory construction, plaintiffs strenuously contend that the adjusted original cost basis as reported by plaintiffs should not have been altered by the Commissioner to reflect non-allowable depreciation. Additional reliance for their argument is placed by plaintiffs upon contemporary interpretative regulations issued by the Commissioner.[8]

The Government's position is that the applicable statutes allowed depreciation on the trust property during the thirteen-year period and that, therefore, the Commissioner properly deducted the ag-

trust, then there shall be included in computing his net income his distributive share of the income of the estate or trust for its taxable year ending within the taxable year of the beneficiary. In such cases the beneficiary shall, for the purpose of the normal tax, be allowed as credits, in addition to the credits *allowed to him under section 216,* his proportionate share of such amounts specified in subdivisions (a) and (b) of section 216 as are received by the estate or trust.

"(e) In the case of an estate or trust the income of which consists both of income of the class described in paragraph (4) of subdivision (a) of this section and other income, the net income of the estate or trust shall be computed and a return thereof made by the fiduciary in accordance with subdivision (b) and the tax shall be imposed, and shall be paid by *the fiduciary in accordance with subdivision (c),* except that there shall be allowed as an additional deduction in computing the net income of the estate or trust that part of its income of the class described in paragraph (4) of subdivision (a) which, pursuant to the instrument or order governing the distribution, is distributable during its taxable year to the beneficiaries. In cases under this subdivision there shall be included, as provided in subdivision (d) of this section, in computing the net income of each beneficiary, that part of the income of the estate or trust which, pursuant to the instrument or order governing the distribution, is distributable during the taxable year to such beneficiary."

Section 210 of the 1921 Act, 42 Stat. 233, imposed a normal tax of eight per cent on individual net income in excess of credits over $4,000. (United States citizens and residents were taxed at four per cent for the first $4,000 of income.) Section 211 contained the surtax rates on individual net income. Section 214 provided that in computing net income certain specifically enumerated deductions should be allowed: Subparagraph (8) of section 214(a), 42 Stat. 240 defined one of these specifically allowable deductions as:

"(8) *A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.* * * *" (Emphasis supplied.)

7. Dixon v. Commissioner, 1932, 25 B.T.A. 1164, affirmed, 7 Cir., 1934, 69 F.2d 461, on authority of Laflin v. Commissioner, 7 Cir., 1934, 69 F.2d 460; White v. Commissioner, 1932, 25 B.T.A. 243; United States v. Blow, 7 Cir., 1935, 77 F.2d 141; Roxburge v. Burnet, 1932, 61 App.D.C. 141, 58 F.2d 693; Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L. Ed. 634.

8. Plaintiffs rely upon:

Treasury Decision 2267 (1915) interpreting the Revenue Act of 1913 and superseding Treasury Decision 1943 (1914);

Treasury Decision 2690, Regulations No. 33 (Revised), Article 29, Paragraph 199 (1918), interpreting the provisions of the Revenue acts of 1916 and October 3, 1917;

A.R.R. 3959 (II-2 C.B. 162) (1923), a ruling by the Treasury Department's Committee on Appeals and Review involving depreciation during 1916 to 1919, claimed by a trustee of buildings.

The above regulations are discussed in Pennsylvania Company for Insurance v. Commissioner, 1928, 10 B.T.A. 428.

Treasury Decision 1943 (1914) did not deal explicitly with the question of whether depreciation was allowable to either the trustee or income beneficiary, where there was no provision in the trust instrument for the maintenance of a depreciation reserve fund. However, in dealing generally with the filing of a return by the fiduciary, the Treasury Decision contains a sample form; and the "Line 6" deduction of that sample form provides for a deduction for "actual repairs made on building, *or amount allowed for wear and tear*" from gross income in computing the "amount of income due beneficiary, which is subject to normal tax." (Emphasis supplied.)

This interpretation was restricted by Treasury Decision 2267 (1915), which provided:

"In the case of a trust estate where the

gregate depreciation for the period in computing the gain on the sale of the hotel. The following cases are relied upon by the Government: Fidelity-Philadelphia Trust Co. v. Commissioner, 3 Cir., 1931, 47 F.2d 36; United States Trust Co. of New York v. Commissioner, 1934, 31 B.T.A. 54; Hall v. United States,

terms of the will or trust or the decree of a court of competent jurisdiction provide for keeping the corpus of the estate intact and where physical property forming a part of the corpus of such estate has suffered depreciation through its employment in business this office will permit a deduction from gross income for the purpose of caring for this depreciation, where the deduction is applied or held by the fiduciary for making good such depreciation. *No depreciation deduction will be permitted by fiduciaries otherwise than as here provided.* Fiduciaries should set forth in connection with their returns the provision of the will or trust or decree requiring such depreciation deduction where any exists, or that actual depreciation occurs, the amount thereof, and that the same has been or will be preserved and applied as such.

"*The intent and purpose of this regulation is to deny to fiduciaries the right of claiming a deduction for depreciation in returns for the income tax of beneficiaries when, in fact, no depreciation reserve is established nor is authorized to be established,* but the amount claimed as a deduction for depreciation is actually paid to the beneficiary as income.

"All amounts paid by fiduciaries to beneficiaries of trust estates from the income of such trust estates are held to be distributions of income and will be treated for income-tax purposes in accordance with the provisions of the law and regulations applicable to the income of such beneficiaries. * * *" (Emphasis supplied.)

Of substantially the same effect was Treasury Decision 2690, Regulations No. 33 (Revised), Article 29, Paragraph 199 (1918), interpreting the Revenue acts of 1916 and October 3, 1917:

"In the case of a trust estate where the terms of the will or trust or the decree of a court of competent jurisdiction provides for keeping the corpus of the estate intact, and where physical property forming a part of the corpus of such estate has suffered depreciation through its employment in business, a deduction from gross income for the purpose of caring for this depreciation, where the deduction is applied or held by the fiduciary for making good such depreciation, may be claimed by the fiduciary in his return of income. Fiduciaries should set forth in connection with their returns the provi-

sion of law, trust, or decree requiring such depreciation deduction where any exists or when actual depreciation occurs, the amount thereof, and that the same has been or will be preserved and applied as such. All amounts paid by fiduciaries to beneficiaries of trust estates from the income of such trust estates, whether from reserves or otherwise, are held to be distributions of income and will be treated for income-tax purposes in accordance with the provisions of law and regulations applicable to income of such beneficiaries."

The provisions of the Revenue Act of 1918, taxing trust income, were interpreted by Treasury Decision 2831, Regulations No. 45, Articles 27–29, Paragraphs 185–210. Paragraph 199 thereof was identical with Paragraph 199 of Treasury Decision 2690, quoted above.

Treasury Decision 2831, cited in the preceding paragraph, was amended in 1920 by Treasury Decision 2987, which added Article 347 to Regulations No. 45. Article 347 provided:

"In the case of certain estates and trusts it is recognized that the estate or trust cannot be treated as a unit for income-tax purposes and may represent an aggregate of distinct interests, to all of which the fiduciaries are responsible. In such cases the procedure stated in this article should govern. The following are recognized as cases which cannot be treated as a unit and must, therefore, be governed by this article: (a) When there is income distributable periodically and also income which is to be accumulated in trust, held for future distribution, or added to the corpus; (b) when there is income distributable periodically and also income (according to the Federal income-tax statutes and regulations) which is not distributable periodically under State law, e. g., gains from sale of capital assets, stock dividends; (c) when there is income distributable periodically and deductions (according to Federal income-tax statutes and regulations) which are not deductible under State law from the distributable income, e. g., losses from the sale of capital assets, depletion, depreciation.

"In ascertaining whether an estate or trust comes within any one of the cases just enumerated *the provisions of the Federal statutes and regulations—rather than the provisions of the will or trust and the provisions of State laws—shall determine*

1942, 43 F.Supp. 130, 95 Ct.Cl. 539, certiorari denied 1942, 316 U.S. 664, 62 S. Ct. 944, 86 L.Ed. 1740, rehearing denied 1942, 316 U.S. 709, 62 S.Ct. 1105, 86 L. Ed. 1776; Jones v. Commissioner, 8 Cir., 1934, 72 F.2d 114, certiorari denied 1934, 294 U.S. 716, 55 S.Ct. 515, 79 L.Ed. 1249; Old Colony Trust Co. v. White, D.C. Mass.1929, 34 F.2d 448.

An analysis of the above-cited cases shows them to be clearly in point. In the Fidelity-Philadelphia Trust Co. case, which bears striking similarities to the litigation now before this Court, the taxpayer petitioned the Third Circuit to review a Board of Tax Appeals order sustaining an assessment of income tax by the Commissioner. The issue was wheth-

*what items constitute taxable gross income or allowable deductions;* the provisions of the will or trust and of State laws shall determine the allocation of items of gross income or deduction; that is, to which of the different interests making up the whole such items shall be charged or allowed. In cases which are to be treated under this article, the items of gross income and deduction as determined by the Federal income-tax statutes and regulations must be scrutinized and classified in accordance with the provisions of the will or trust or rules of local law into two classes, one subject to the procedure specified in subdivision (e) of section 219 and the other to the procedure specified in subdivision (d) of section 219. The result will be that the beneficiary to whom income is to be distributed periodically must include, in computing his net income, the amount actually distributable to him (except exempt income) even though the aggregate of the distributive shares should be larger than the net income of the estate or trust computed as a unit. Any gain, profit, or income which is not periodically distributable must be included in computing the net income of the estate or trust, so that the fiduciary will pay the tax upon any excess of the net income of the estate or trust computed as a unit over the aggregate distributive shares.

"For example, a trust is created, the income of which is distributable periodically for the life of the beneficiary, the remainder over to others. The trust has the following items of income: Rent, $3,000; interest, $2,000; gain on sale of capital assets, $1,500; cash dividend, $1,000. And deductions: General expenses (all deductible from distributable income), $700; depreciation, $300; loss on sale of capital assets, $3,000. Under the terms of the trust $5,300 will be distributed to the beneficiary, viz., rent, $3,000; plus interest, $2,000; plus dividend, $1,-000; less general expenses, $700. The gain and loss on the sale of capital assets will be considered capital items affecting the corpus only, *and the items of depreciation will not affect the amount to be distribut-*

ed, *there being no rule of State law or provision of the trust requiring this deduction from distributable income.* In such a case the fiduciary must report on Form 1041, showing a net income for the trust of $3,500 and must show as the distributive share of the beneficiary the $5,300 to which he is entitled. The beneficiary must account for the amount actually distributable to him as income, viz., $5,300, as provided in section 219(d) and will be entitled to a credit of $1,000 on account of the dividends in computing the normal tax, *but not to any deduction on account of depreciation* or capital losses.

"If there had been no loss on the sale of capital assets so that the net income of the estate or trust was $6,500, Form 1041 should show the distributive share of the beneficiary as $5,300 and the distributive share of the fiduciary as $1,200; and the fiduciary should file a separate return on Form 1040 A, reporting $1,200 for taxation." (Emphasis supplied.)

The import of the above regulations can be summed up as follows:

(1) Under Treasury Decision 1943 (1914), interpreting the 1913 Act, the trustee was allowed a deduction for depreciation.

(2) Under the superseding Treasury Decision 2267 (1915), also interpreting the 1913 Act, the trustee was not allowed a deduction for depreciation where all the trust income was currently distributable and where the trustee was not authorized to set up a depreciation reserve.

(3) This interpretation remained constant under the Revenue Acts of 1916, October 3, 1917 and 1918, until 1920, when Treasury Decision 2831, Regulations No. 45, was amended by Treasury Decision 2987, Article 347.

(4) The last-cited Article 347 allowed the trustee a deduction for depreciation but allowed him to set off the deduction only against those income items which were income for purposes of Federal income tax law, but which were not income distributable to the beneficiary under applicable state law, such as, capital gains income.

er the Commissioner could adjust the cost basis of property at the time of its sale in 1923 to reflect depreciation for the years 1913 to 1923, which depreciation had in fact never been claimed because the trustee (as in the case at bar) contended that, under the applicable acts and regulations, it was not entitled to take deductions for depreciation. The precise question before the Third Circuit was whether depreciation was "allowable" to the trustee during the applicable years.

The following three arguments advanced by the trustee as to why depreciation was not "allowable" closely parallel those submitted by the plaintiffs at bar: (1) that the trustee was not permitted to take a depreciation deduction under the applicable Revenue codes; (2) that the regulations specifically forbade a deduction for depreciation by the trustee except where the trust instrument made specific provision for keeping the corpus intact; (3) that deductions for depreciation were not available to the trustee and, therefore, not binding upon it in view of a specific Pennsylvania statute which forbade accumulations in trust estates and made it unlawful for the trustee to set aside a reserve for depreciation and to make deductions of depreciation from year to year.

All three arguments were rejected by the Third Circuit. The first contention was overruled on the basis of the explicit wording of the Revenue Act of 1921,[9] inasmuch as section 219(a) of that Act provided that the tax imposed by sections 210 and 211 (the tax on individual income) should apply to trust income, and that section 214(a) (8) allowed a deduction for depreciation in computing the net income upon which an individual was taxable.[10]

The second argument, based upon the regulations, was disposed of in the following words:

"However that may be, and whether the regulations were validly explained or ruled in Pennsylvania Co. v. Commissioner, 10 B.T.A 428, such regulations are subordinate to the revenue act and, like the Act itself, are finally controlled by the decision in the Ludey case. [United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054]."

The third point, involving the restrictive effect of state law, was considered without merit for the reason that state law could not interfere with federal income tax calculations, i. e., that state law could not deprive a trustee of a deduction to which he was entitled or with which he was charged under federal law.

The cases cited by plaintiffs are readily distinguishable as involving situations where the income beneficiary—as distinguished from the trustee—attempted to claim the deduction for depreciation.[11]

Relying on Helvering v. Winmill, 1938, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52; Crane v. Commissioner, 1947, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301; and Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536, plaintiffs argue that depreciation was not allowable under the applicable acts *as interpreted by the regulation,* in light of the "doctrine" that the contemporary and long-standing construction given a statute by author-

9. The relevant provisions of the Revenue Act of 1921 are set forth in footnote 6, supra.

10. Plaintiffs' position with respect to the Fidelity-Philadelphia Trust Co. case is (a) that the Third Circuit did not pass upon the argument that the contemporary and long-standing construction given a statute by authorized officials and administrative agencies of the Government acquires the force and effect of a statute;

and (b) that Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, has, in effect, overruled the Fidelity-Philadelphia Trust Co. case. Both points are discussed infra.

11. The distinction between a trustee claiming the depreciation deduction where the beneficiary cannot do so, is brought out in the illustration given at the end of Treasury Decision 2987, set forth in footnote 8, supra.

ized officials and administrative agencies of the Government acquires the force and effect of a statute.[12]

In determining the weight to be given to a particular regulation of the Treasury Department, where the question is one of statutory interpretation, a court may apply either one or both of two doctrines. One is that the courts will give great weight to the regulations as the reasoned interpretations of men peculiarly and intimately familiar with the field.[13] The second (sometimes referred to as the "reenactment doctrine") is that Congress is deemed to be cognizant of all the regulations of administrative agencies interpreting federal legislation, and that, in repeatedly passing the interpreted statute in unchanged form, Congress is in effect approving the administrative interpretation contained in the regulations, thereby endowing the administrative regulations with a force equivalent to a congressionally enacted statute. The case law on the subject is extensive. The doctrines are not without their areas of confusion. The "reenactment doctrine" has been criticized as being an unrealistic fiction.[14]

For present purposes, it will suffice to note the settled canon of construction that, where the language and meaning of the statute are clear, the subsequent reenactment of the statute does not constitute an adoption of its administrative construction.[15]

Plaintiffs have argued at length that Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, has seriously impaired the authority of the Fidelity-Philadelphia Trust Co. case. As I read the Freuler case, it dealt with a question that is essentially different from the issue now before the Court, or that was before the Court in the Fidelity-Philadelphia Trust Co. case. In the Freuler case, the Supreme Court was called upon to construe section 219(d) of the Revenue Act of 1921, which required an income beneficiary to pay a tax on that part of the income of an estate or trust which, "pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not." The only issue was whether income beneficiaries were required to pay taxes on trust income that was actually distributed to them or only on that portion which a state court later held was properly distributable to them. The Supreme Court held that local law determines the income "distributable" to the life tenant—a result dictated by the language of the federal statute, which implicitly refers such determination to state law.

By contrast, the Fidelity-Philadelphia Trust Co. case passed on the question whether depreciation was allowable to a trustee under the terms of a trust instrument requiring all income to be distributed to the beneficiaries, under the Internal Revenue codes applicable for the years 1913 to 1923. The Freuler case is, therefore, not to be read as being inconsistent with the Fidelity-Phila-

---

12. For a comprehensive analysis of the "doctrine," see Paul, Studies in Federal Taxation (Third Series, 1940), Use and Abuse of Tax Regulations in Statutory Construction, p. 420.

13. Paul, op. cit. supra, at 421:
"A court cannot reason in a mental vacuum on the meaning of words, and the guidance of 'able men, and masters of the subject' is not lightly to be scouted."

14. Paul, op. cit. supra, at 426.
Compare those cases in which it has been said that the opinion of such officials as the Attorney General and the Maritime Commission on questions of statutory interpretation is often given "little or no weight", Mr. Justice Clark, dissenting, in United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 677, or is followed "only in so far as its reasoning is persuasive." Spirt v. Bechtel, 2 Cir., 1956, 232 F.2d 241, 244.

15. Biddle v. Commissioner, 1937, 302 U.S. 573, 582, 58 S.Ct. 379, 82 L.Ed. 431, citing Iselin v. United States, 1926, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566; Louisville & N. R. Co. v. United States, 1931, 282 U.S. 740, 51 S.Ct. 297, 75 L.Ed. 672; Helvering v. New York Trust Co., 1934, 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361.

delphia Trust Co. case. This conclusion is buttressed by the double fact that the Freuler case does not mention the Fidelity-Philadelphia Trust Co. case, whereas the Supreme Court in a later case, Virginian Hotel Co. v. Helvering, 1943, 319 U.S. 523, 525, 63 S.Ct. 1260, 87 L.Ed. 1561, cites the Fidelity-Philadelphia Trust Co. case with approval.

Plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

Settle order on notice.